187 So.2d 432

**STATE of Louisiana**

**v.**

**Prien CEASER.**

**No. 48002.**

June 6, 1966.

Jack Rogers, Rogers, McHale & St. Romain, Lake Charles, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Frank T. Salter, Jr., Dist. Atty., J. B. Jones, Jr., Asst. Dist. Atty., for appellee.

SUMMERS, Justice.

Prien Ceaser was charged in a bill of information dated March 12, 1965 with "receiving stolen things" (a calf), as denounced by Article 69 of the Criminal Code. He was convicted by a five-man jury and sentenced to the State Penitentiary for one year. On this appeal he relies upon five bills of exceptions taken to errors alleged to have been committed during the trial.

Ceaser was arraigned on the charge in Calcasieu Parish in April 1965, at which time he was represented by his employed attorney Mr. Phillip St. Romain, law partner of Mr. Jack Rogers. The latter tried this case and now represents Ceaser on this appeal.

After his arraignment, but prior to trial, Ceaser was summoned as a witness by the State to testify in Cameron Parish at the trial of the brothers Wilson, George and Wilfred Celestine, who were being tried for the theft of the calf Ceaser was then charged with having received.

At the trial of the Celestine brothers Ceaser gave testmony which was clearly incriminating. His testimony disclosed that he knew the Celestines; that he received the calf which they had stolen in Cameron Parish and delivered to him in Calcasieu Parish for resale; that he shot and butchered the calf at his home and retained a hind quarter and the liver for his work, which officers confiscated along with the calf hide found on the premises. He further identified a picture of his house and a smokehouse in the back yard where the hind quarter of the calf was found hanging. Some knives, a saw and a rifle used to slaughter the calf were identified by Ceaser as his property. These disclosures and the objects mentioned are referred to by Ceaser's counsel as the fruits of his testimony and of an illegal search and seizure.

Thereafter, prior to his own trial, on September 13, 1965, Ceaser's counsel filed a motion by which he sought to have suppressed all of the fruits of his testimony at the Celestine trial.

He argues in support of the motion that failure to advise him that he need not testify, and that if he did testify what he said might be used against him, was a violation of his constitutional right against self incrimination. And, furthermore, not informing him that he had a right to the advice of counsel before answering the questions propounded to him as a witness deprived him of an important constitutional right. It is asserted that, because the interrogation was conducted in disregard of these alleged constitutional rights, the fruits of the interrogation are the product of an illegal search and seizure under the Federal and State Constitutions and should be suppressed. The trial judge overruled the motion, and Bill of Exceptions No. 1 was reserved.

During his trial which followed, Ceaser objected to the introduction of any evidence given by him previously in the Celestine trial on the ground that the motion to suppress the fruits of that interrogation had been erroneously denied. He asked that the objection be made general to any evidence obtained by virtue of that interrogation which the State might seek to introduce. This objection was overruled and Bill of Exceptions No. 6 was reserved.

Under these circumstances the burden is upon the defendant to establish that the evidence he sought to suppress was actually used against him, otherwise he has no cause to complain. La.Code Crim.Proc. art. 557. For this reason we cannot fail to observe at the outset that the partial record filed in this court fails in any manner to disclose that the fruits of the interrogation at the Celestine trial were actually used in Ceaser's trial. But, since the district attorney opposed the motion to suppress, and as the trial judge refused to suppress the evidence, we may infer that some or all of that evidence was used to convict Ceaser. We will, therefore, proceed to a consideration of the legality of the evidence obtained as a result of Ceaser's interrogation at the Celestine trial.

First, Ceaser's contention that he was not advised of his right against self incrimination is without foundation. Apparently when Ceaser's counsel requested an extract of his testimony from the reporter of the Celestine trial, the judge's advice against self incrimination, which appeared in the transcript immediately preceding Ceaser's testimony, was omitted either through inadvertence or as the result of a belief that it did not constitute a part of that testimony. Evidently counsel's contention that Ceaser was not advised of his rights against self incrimination stems from this omission. Suffice it to say, upon the trial of the motion to suppress, the State's

attorney filed a certified copy of an extract from the transcript in the Celestine trial, which supplements the extract obtained by Ceaser's counsel, and which we quote as follows:

"(Prien Ceaser was called as a witness on behalf of the State. Before taking the witness stand to testify the following remarks were addressed to him by the Court.)

"THE COURT: Before you start to testify, under the Constitution of our State and of the United States you. are not obliged to give any evidence that might tend to incriminate you. However, if you do go ahead and testify and give any evidence that might do so, then, of course, it could be used against you. Do you understand that?

"PRIEN CEASER: Yes, sir.

"MR. JONES: Thank you, Judge."

This indisputable evidence disposes of Ceaser's contention that he was not advised of his right against self incrimination. Defense counsel's brief seems to concede this issue now, but he persists in the contention that the motion to suppress was erroneously denied because "at no time did the judge or district attorney even suggest or hint that he had a right to consult with an attorney (or ask could he afford one) before testifying."

■ This argument is difficult to understand as the record unmistakably discloses that counsel, or a member of his firm, was employed by Ceaser and represented him after his arrest long before he was summoned as a witness in the Celestine trial. These same attorneys have represented Ceaser since the Celestine trial and still represent him. It is reasonable, therefore, to conclude, in the absence of a showing to the contrary, that they represented Ceaser in the interim at the time of the Celestine trial. Argument to this effect has been advanced by the district attorney and has not been refuted.

Undoubtedly, the State had a right to summon Ceaser as a witness. And Ceaser had ample opportunity, after receipt of the summons and prior to appearing at the Celestine trial, to consult with his attorneys regarding his appearance and whether he should claim the right against self incrimination. If he chose not to consult his employed counsel in this instance he had that right, and, if he did in fact consult counsel on this question, we can discover no error simply because counsel was not in attendance with him. Viewed in light of the fact that the judge unequivocally advised Ceaser of his right against self incrimination, which right he chose not to assert, the contention has no substance.

■■ Moreover, we know of no requirement that the court or the district attorney advise a witness at someone else's trial that he is entitled to advice of counsel in addition to being advised of his right against

self incrimination, and we have been cited to no such authority. Nor do we find such a requirement related to fundamental rights indispensable to fair play which are inherent in our system of justice. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Betts v. Brady, 316 U. S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942); Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). Advice given by the judge concerning the witness' rights against self incrimination satisfies these requirements.

Hence no deprivation of constitutional rights occurred, and the fruits of Ceaser's testimony at the Celestine trial were admissible in evidence. Bills of Exceptions Nos. 1 and 6 are without merit.

Bills of Exceptions Nos. 2 and 3 were reserved to the court's denial of defense motions to quash the jury panel on the ground that of the sixty persons on the jury venire called as prospective jurors, twenty-four were excused by the judge out of the presence of the defendant, prior to the day set for trial, and, therefore, defendant was presented with a hand-picked jury venire.

What this contention amounts to is a claim that the action of the judge in excusing this large number from the jury venire may have been a part of a scheme of systematic exclusion, and, when counsel for Ceaser requested time in order that he might investigate the validity of the reasons offered by the judge for excusing the

prospective jurors, it was error for the judge to refuse.

Ceaser's counsel makes no showing that the court's action resulted in any prejudice or that fraud or collusion was involved (see La.Code Crim.Proc. art. 203); but he asserts, in effect, that he has had no opportunity to investigate the judge's actions to determine if, perhaps, the judge may have excused all Negroes, or non-cattle men, or the younger people on the jury panel to enhance the possibilities of conviction, or, perhaps, excused prospective jurors on the venire without good cause, thereby prejudicing Ceaser's rights to a fair and impartial jury selected from a cross section of the community.

■ The per curiam of the trial judge informs us—and there is nothing to contradict this statement of the facts—that sixty persons were selected as prospective petit jurors for the term of court at which Ceaser was tried. Thirteen of the number could not be located by the sheriff and were not served with summons. Counsel for the State explains this failure by stating in his brief that Calcasieu Parish is a relatively complex industrial area of the State which attracts a significant transient population. It is not unusual in such a locality, he continues, for large numbers on jury venires, because of job changes and consequent changes in addresses, to be unavailable for service when summons are issued for their attendance at the trial. This strikes us as

a plausible argument, based upon facts prevailing in that area of the State of which we may take judicial cognizance. La.Code Crim.Proc. art. 422(6). Thirteen, then, were not excused by the judge but were unavailable for service.

Six veniremen were excused by the court on the basis of what the trial judge considered to be competent doctors' certificates. Two were excused by the court as unqualified—being unable to read or write. La.Code Crim.Proc. art. 172. Three were excused because they were traveling salesmen and claimed the exemption accorded them by law. La.Code Crim.Proc. art. 174 (3). Three were excused for reasons of personal hardship, such as operating a one-man business. Thus only fourteen were excused by the judge. This fourteen, together with the thirteen who could not be found, left thirty-three persons available for jury service.

■ It is within the discretion of the trial judge to excuse for cause jurors on the regular venire prior to trial. La.Code Crim. Proc. art. 345. The reasonable exercise of this discretion will not be disturbed on appeal unless there is a clear abuse thereof, or there is a showing of fraud or collusion resulting in prejudice to the accused. State v. Jugger, 217 La. 687, 47 So.2d 46 (1950); State v. Hoover, 203 La. 181, 13 So.2d 784 (1943).

■ The law of this State, then, is well settled that refusing to grant a continuance in such a case is a matter which addresses itself principally to the trial judge's discretion; and the fact that some of those absent were excused by the judge before trial, and some of those summoned were not found, has been held to furnish no ground for delay or continuance. See Marr's Criminal Jurisprudence of Louisiana, §§ 439 & 440 (1923) and cases cited there.

No abuse of the discretion reposed in the trial judge is apparent in the reasons he assigned for excusing the prospective jurors.

■ Alluding now to counsel's contention that the refusal of the judge to grant a continuance denied him the opportunity to investigate the actions of the trial judge in excusing the prospective jurors prior to trial: To begin with, there is no showing that a proper investigation could not have been made beforehand. It is reasonable to require such a showing, and we consider it to be a prerequisite to the granting of a motion for a continuance. Unless such a showing is made, it is too late to ask for time to undertake such an investigation after the case is called for trial.

■■ It is noteworthy, too, that in spite of the number of jurors not reporting, the sixty-man venire left a sufficient number of jurors (thirty-three) from which the accused could exercise a choice in the selec-

tion of a five-man jury. For the law presumes the composition of jury venires to be fairly drawn from a cross section of the community unless the party complaining establishes otherwise. State v. Barksdale, 247 La. 198, 170 So.2d 374 (1964). The foregoing bills of exceptions are therefore without merit.

The last issue is formed by the overruling of a defense motion to exclude alleged oral confessions and a written confession made by Ceaser and sought to be introduced at his trial because they were given immediately after his arrest and prior to the time he was advised that he was entitled to counsel. Bill of Exceptions No. 5 was reserved to this ruling.

▮▮▮ Counsel's sole contention in connection with this bill is that the rule of the Escobedo case (Escobedo v. State of Il-

linois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed. 2d 977 (1964)) has been violated. However, the transcript of the proceedings attached to this bill does not furnish any facts from which we might determine whether the rule of the Escobedo case applies. Therefore, we must conclude that the issue has not been properly presented. La.Code Crim. Proc. art. 498 et seq.

Finally, it is appropriate to observe that the judge's per curiam sets forth that a great preponderance of the evidence presented out of the presence of the jury established the free and voluntary nature of the confessions. No evidence was presented by the defendant on this issue.

For the reasons assigned the conviction and sentence are affirmed.

McCALEB, J., concurs in the decree.