HAMLIN, Justice.
 

 Defendant appeals from his conviction of the crime of manslaughter (LSA-R.S. 14:31) and his sentence to serve twenty years at hard labor in the Louisiana State Penitentiary.
 

 Four bills of exceptions are presented for our determination.
 

 BILL OF EXCEPTIONS NO. 1
 

 Bill of Exceptions No. 1 was reserved when the trial court overruled defense counsel’s objection to certain actions of said court with respect to prospective jurors which took place on September 16, 1968, the day prior to the commencement of the trial.
 

 The following per curiam of the trial judge sets forth in detail his actions of September 16, 1968, his reasons therefor, his ruling, and his reasons for not sustaining defense counsel’s objection:
 

 “Bill of Exception No. 1, was taken, re- . served and perfected, to the following actions of the trial of the court.
 

 “The trial of the defendant, David Michael McGuire, was regularly fixed for trial before a jury on Tuesday, September 17, 1968, the second day of the regularly scheduled jury week. On Monday, September 16, 1968, another criminal jury case had been fixed for trial. Upon opening court on Monday, September 16, 1968, the Court was advised by the District Attorney that the trial scheduled for that date would not come up as a result of the defendant en
 
 *563
 
 tering a plea of guilty. However, the jury which had been selected by the jury commissioners to serve for that week were all present in court on Monday, September 16th, except those who were later discovered to be absent. After disposing of other preliminary business on Monday, September 16, the court called all of the jurors who were scheduled to appear in court and have [had] them come before the court. The court ordered the clerk to swear the jurors on their voir dire and proceeded to examine them and test them as to their general qualifications to serve as jurors. Of the total number of thirty (30) petit jurors who were summoned to be in court on that date, only twenty-one (21) answered present, the remaining nine having been deceased or moved out of the parish. The court examined the prospective jurors only on their general qualifications to serve as jurors, using the test as set forth in the statute, and no mention whatsoever was made of the name of the defendant McGuire or the case fixed for Tuesday, September 17. It is admitted that during this calling or examination as to their qualifications neither the defendant nor his attorney were present in court, the defendant McGuire’s trial being scheduled for the following day, Tuesday, September 17th. Likewise, none of the other defendants or their attorneys whose trial dates were scheduled on subsequent days in that jury week were present.
 

 “Although nothing whatsoever was done in regard to or in connection with the trial of this defendant on Monday, September 16, 1968, other than the calling of the jurors and their examination as to their general qualifications, the defendant has objected and excepted to this procedure alleging that it is in violation of Article 831(3) of the Code of Criminal Procedure which states, in affect, that a defendant charged with a felony shall be present, 'at the calling, examintion, challenging, empanelling, and' swearing of the jury and at any subsequent proceeding for the discharge of the jury or of a juror.’
 

 “It should also be noted that on the Monday morning, one of the prospective-jurors was the uncle of the Assistant District Attorney who would be prosecuting the cases for that week. The-court excused this juror. Defendant in his bill does not seriously object to this action of the court.
 

 “The reasons of the trial court in taking this action should be obvious, however they are as follows:
 

 “(1) It has long been the custom and practice of the 16th Judicial District Court to call before it on the Monday of the Petit Jury week all jurors summoned by the jury commissioners to serve as
 
 *565
 
 jurors and to examine all of them on their general qualifications to serve as jurors. Usually there is a felony case scheduled for trial on each day of the week and particularly on Monday of that week, which of course would require that the jury be so sworn and tested.
 

 “(2) It was necessary for the court to take this action to determine which of the jurors who having been summoned for jury duty, had failed to answer their subpoenas and appear to court, and which the court must issue a Bench Warrant for to assure their appearance.
 

 “(3) It was necessary for the court to determine which of the jury panel might have become deceased, moved out of the parish, or be incapable of serving for mental or physical infirmities.
 

 “(4) To determine, as a result of the above whether or not the court would need to summon additional jurors to serve as jurors for the remaining trials during the balance of the Petit Jury week.
 

 “(5) To determíne as a result of the above action, whether or not the remaining number of jurors summoned were qualified and capable, or whether or not the court would have to issue an order calling for the summoning of additional jurors to serve on trials during the remainder of that week.
 

 “After proceeding to the calling, swearing and examination of the jurors ■on their general qualifications on Monday, September 16, 1968, it appeared to the court that nine of the thirty jurors summoned were either absent, dead, or incapable of serving, leaving only twenty-one jurors eligible for jury duty that week.
 

 “Accordingly, the court ordered, pursuant to Article 758 of the Code of Criminal Procedure, that the clerk draw indiscriminately the names of fifteen tales jurors from the general venire box in order to complete the empanelling of the trial jury in order that they be present in court for examination and service on Tuesday, September 17, 1968, which was done. While it is true that neither the defendant nor his attorney were present when the court took the action above described on Monday, September 16, 1968, the court finds, as a matter of fact, that nothing whatsoever was done prejudicial to the interest of the defendant. Neither his name nor any reference to his case was mentioned on Monday, September 16th. The only purpose as above stated was to determine which of the jurors would be available for service on the following day and whether or not it would be necessary to summon additional jurors to complete the panel. The court does not feel that Article 831 intended to deprive the trial courts of the discretion and responsibility of seeing to it that sufficient jurors were available for service in criminal trials. To hold
 
 *567
 
 otherwise would be to require that all defendants and their attorneys must be present on the Monday of the trial week, regardless of which day their trial was scheduled for, or, the equally ridiculous requirement that all jurors summoned for duty during any given trial week, be required to re-appear in court each day to ascertain their qualifications, regardless of whether or not they had been previously determined to be unqualified. This would be an absurd result.
 

 “Even should the Supreme Court determine that this was a violation of the Statute, it was certainly a non-prejudicial one.”
 

 Counsel for the defendant contends that the defendant was charged with a serious felony, and that whether or not it would have been convenient for counsel in this case, as well as counsel in other felony trials, to be present when a jury was being examined is irrelevant. He further contends that despite the fact that the trial judge was willing to call back the excused juror on September 17, 1968, defense counsel should not have been required to inconvenience the juror.- Counsel still further contends that in every felony trial and at every stage thereof, including the calling, swearing, and examination of the jury, the defendant must be present and represented. He submits that the actions of the trial court, even though a matter of custom, cannot prevail over the clear language of LSA-C.Cr.P. Art. 831(3), which recites: “A defendant charged with a felony shall be present: At the calling, examination, challenging, impanelling, and swearing of the jury, and at any subsequent proceedings for the discharge of the jury or of a juror.”
 

 Article 401 of the Code of Criminal Procedure recites the general qualifications of jurors, and Article 783 provides: “The court may excuse a member of the petit jury venire at any time prior to the time he is sworn as a juror to try a particular case. The panel shall be selected from the remaining members of the petit jury venire. The court, either on its own motion, or that of the state or a defendant, may order the attachment of an absent and unexcused petit jury venireman.” Article 761 states that a jury trial commences when the first prospective juror - is called for examination.
 

 We find that on Monday, September 16, 1968, the trial judge determined the general qualifications of prospective jurors who were to serve during the week. Exercising his discretion he excused one prospective juror, the uncle of an assistant district attorney who was to prosecute cases during the week. Those questioned had been called, but we do not find that the call was that “call” contemplated by Art. 831(3), C.Cr.P., supra. The prospective jurors called on September 16, 1968 were
 
 *569
 
 not called to try a specific case; they were called so that the court could determine whether they would be available for jury service during the week. They were not called for the examination contemplated by Art. 761, C.Cr.P., supra. Defense counsel was not deprived of his voir dire rights which he was entitled to assert and did assert after the commencement of trial.
 

 The case of State v. Thomas, 128 La. 813, 55 So. 415, cited by counsel for defendant, is not apposite to the instant prosecution. In that case the facts reflect that after a recess of court on the first day of trial, a juror was called and sworn at a time when the defendant was not present in court. The sheriff was directed to bring into court the defendant, who was being prosecuted for murder and later convicted of manslaughter. This Court set aside the verdict and sentence; it found that the defendant was not present at every stage of his trial.
 

 We conclude that herein the trial judge neither abused his discretion nor committed reversible error in overruling defense counsel’s objection to the proceedings of September 16, 1968. We agree with the reasoning of his per curiam supra and find that defendant suffered no prejudice by not being present in court on September 16, 1968. See, State v. Fulghum, 242 La. 767, 138 So.2d 569; 17 La.L.Rev, p. 219; State v. Ceaser, 249 La. 435, 187 So.2d 432, 437; Cf. State v. White, 244 La. 585, 153 So.2d 401.
 

 Bill of Exceptions No. 1 is without merit.
 

 BILL OF EXCEPTIONS NO. 2
 

 Bill of Exceptions No. 2 was reserved when the trial judge overruled defense counsel’s obj ection to his order to the Sheriff of St. Mary Parish to summon twenty prospective jurors in and around the courthouse to appear in open court immediately to serve as tales jurors. The bill was also reserved to the trial court’s overruling defense counsel’s objection to the manner in which the tales jurors were selected.
 

 Testimony attached to the instant bill reflects that on September 17, 1968, it appeared to the trial court that there were not sufficient names left in the jury box to complete the empanelling of the jury. Pursuant to Art. 785, C.Cr.P, the court gave the order supra. Defense counsel admitted that the Code of Criminal Procedure permitted the method employed by the court but argued that the law was archaic, outdated, and resulted in unfair treatment to the defendant in that his rights to have an impartial jury selected were relegated to the whim of the sheriff’s department. Objection was overruled, and the sheriff’s office carried out the judge’s order.
 

 A list of persons who worked on Main Street was compiled by the sheriff’s office, and the tales jurors were summoned from
 
 *571
 
 that list. Chief Deputy Sheriff K. H. Wright testified that there was no selection made of people at random and on cross-examination testified:
 

 “Q. Captain Wright, did anyone give you any instructions as to who to pick ?
 

 “A. No, not at all.
 

 “Q. Had you, in lieu of an apparent list, walked down the street, would you have picked this tales jury in any other way?
 

 ■“A. That’s the only way I know how to pick them.
 

 “Q. In other words, you prepared your list from places of business in the near vicinity of the Court House and you put on that list the names of persons whom you thought could get away from their businesses to serve as tales jurors?
 

 “A.
 
 That’s correct. We tried to take one from each business, if we could.
 

 “Q. If you had walked down the street and walked into each place of business, would it have been any different ?
 

 “A. No, not at all.”
 

 On redirect examination, Captain Wright said that he knew the persons on the list and that they were businessmen in town.
 

 Counsel for the defendant argues in this Court that Article 785(D) of the Code of Criminal Procedure is unconstitutional and he contends:
 

 “ *
 
 * * the United States Supreme Court has in the past decade oft repeated its mandate that the trial of persons charged with serious crimes must be conducted in an atmosphere of fairness and impartiality. To cite authorities of the United States Supreme Court directing Lower Courts, both Federal .and State, to protect and guarantee the rights of defendants to be tried by ‘cross-section’ jurors would be useless. There was a time when because of the lack of communication and difficulty of travel that out of necessity, the provisions of Article 785(d) were necessary. This is no longer the case. There is absolutely no reason why the law should be so strict in the selection of a general venire and later, at the most crucial point (the trial), all of these precautions be left to the whim of the prosecuting authorities. The Court may ask, how is this left to the whim of the prosecuting authorities? The answer is obvious, it is the Sheriff to whom the Court directs its order to summon additional jurors. The Sheriff is the officer responsible for law enforcement in the Parish. Human nature being what it is, it cannot be denied that once a person is charged and left to stand trial that the Sheriff would like to
 
 *573
 
 close the case on a successful note. All the law protecting defendants at the jury selection stage are just so many words when the practical application of a situation, such as took place in the McGuire trial is allowed to stand. To put the stamp of approval on this type of procedure is to revert to the dark ages in our administration of justice.”
 

 Counsel further contends that the method employed by the sheriff’s office for the selection of the tales jurors violates the basic concept of selection of a jury, and that the sheriff’s office should have carried out the judge’s order fairly and not from a prepared list. He argues that the trial judge’s orders were prostituted, and that the judge should have realized such fact.
 

 Article 785(D) of the Code of Criminal Procedure provides:
 

 “In parishes other than Orleans, the judge may order the summoning of tales jurors from among the bystanders or persons in or about the courthouse, in place of the drawing of tales jurors.”
 
 [1]
 

 Section (E) of the foregoing article provides that when called, tales jurors shall be selected for completion of the panel in-accordance with Article 784.
 
 [2]
 

 An official revision comment to Article 785, C.Cr.P., states:
 

 “(e) Art. 199 of the 1928 Code provided that in Orleans Parish the judge could not summon bystanders to serve as tales jurors. Art. 186 of the 1928 Code provided that in other parishes tales jurors could be summoned from among bystanders if the judge obtained the consent of the district attorney and the defendant or his counsel. Under the above article, in parishes other than Orleans, the court has unrestricted authority to summon bystanders as tales jurors. In some sparsely populated areas of the state, the use of bystanders as jurors is preferable to summoning tales jurors who might reside at a far distance from the court.”
 

 In non-urban areas it is very probable that the General Venire Box (Art. 408, C.Cr.P.)
 
 [3]
 
 may become almost exhausted during trial, and a problem of securing ad
 
 *575
 
 ■ditional tales jurors is presented to the trial ■court. Therefore, the Legislature, in its ■wisdom, carried partially in substance part ■of Article 186 of the 1928 Code of Criminal Procedure into the new Code of Criminal Procedure as Article 785(D). This was undoubtedly done to facilitate the course of justice and avoid unnecessary delay.
 
 [4]
 

 The new Code of Criminal Procedure became effective January 1, 1967. Modern transportation was at that time not far below the advancement of 1968 and 1969. Therefore, defense counsel’s contention that Article 785(D) is unconstitutional because it provides for an archaic and outdated method of summoning tales jurors by the sheriff is without merit. It is legion and goes without citation of authorities that he who alleges the unconstitutionality, of a statute must prove such. Defense counsel has not met this burden.
 

 In his per curiam to the instant bill the trial judge states that the sheriff’s office complied with the orders of the court. From our review of the jurisprudence, we find that the venire will not be set aside in the absence of allegations of fraud, wrong, or injury in the drawing and summoning of jurors. The cases of State of Louisiana v. Saintes, 46 La.Ann. 547, 15 So. 160; State v. Simmons, 43 La.Ann. 991, 10 So. 382; State v. Harris, 34 La.Ann. 118; State v. Rector, 35 La.Ann. 1098; and, State v. Kellogg, 104 La. 580, 29 So. 285, cited by counsel for the defendant in support of his contentions, are to that effect. The cases of State v. Love, 106 La. 658, 31 So. 289, and State v. Tate, 185 La. 1006, 171 So. 108, are not apposite, in that they did not present an issue similar to the one posed herein. Defense counsel merely states that he renewed his objection when the tales jurors were produced
 
 *577
 
 in court, and that evidence was taken to show that the method of selecting the tales jurors was not in accordance with the law and that the instructions of the court had not been followed. We are constrained to conclude that the defendant suffered no prejudice from the method employed in selecting the tales jurors. The trial judge was satisfied that his order had been obeyed. Under the circumstances which existed when this bill was ■ reserved, we conclude that the trial judge did not abuse his discretion in overruling counsel’s objection.
 

 Bill of Exceptions No. 2 is without merit.
 

 BILL OF EXCEPTIONS NO. 3
 

 Bill of Exceptions No. 3 was reserved when the trial court overruled defendant’s motion for a mistrial based on the court’s refusal to direct a verdict for the defendant, under Article 778, C.Cr.P., and on the further ground that the defendant felt that he could not obtain a fair trial with the jury selected. Contentions urged in Bill of Exceptions No. 1 were reiterated.
 

 Counsel urges in this Court that he was forced to select a jury under the most adverse conditions — at the time the trial court ordered the sheriff to summon tales jurors, counsel had three peremptory challenges remaining and there were five seats to be filled in the jury box. Counsel states that he was not a resident of St. Mary Parish, having been appointed by the court to represent the defendant, and was faced with the selection of jurors on the spur of the moment. He says that he was not able to make a study of prospective jurors and urges that the selection of a jury is a most important phase of a trial.
 

 We have examined the record, and the conclusion is inescapable that defendant received a fair trial and suffered no prejudice from the events which occurred during the trial and on the day prior to its commencement. The record discloses that Clay de la Houssaye, an uncle of the trial judge, served on the jury, but there is no evidence to show that he was anything but fair and impartial.
 
 [5]
 
 No objection was made by counsel that defendant had to accept an obnoxious juror. Therefore, for these reasons and for the reasons set forth in our disposition of Bills of Exceptions Nos. 1 and 2, we find that the trial judge was correct in overruling defense counsel’s motion for a mistrial.
 

 Bill of Exceptions No. 3 is without merit.
 

 BILL OF EXCEPTIONS NO. 4
 

 Bill of Exceptions No. 4 was reserved when the trial court overruled defense counsel’s motion for a new trial.
 

 
 *579
 
 This bill incorporates all objections raised in Bills of Exceptions Nos. 1, 2 and 3, and it raises nothing new for our consideration. Under such circumstances, we find that the bill lacks merit.
 

 Bill of Exceptions No. 4 is without merit.
 

 For the reasons assigned, the conviction and sentence are affirmed.
 

 [1]
 

 .Art. 186 of the 1928 C.Cr.P. provided “ * * * but nothing herein contained shall be so construed as to limit the right of the judge in criminal cases by and ■with the consent of the district attorney and the defendant, or his counsel, after the list of regular jurors is exhausted, to order the summoning of talesmen from among the bystanders or persons in proximity of the court-house, or from any portion of the parish, which the judge may designate.” See, also, LSA-R.S. 15:186, which has been replaced by Art. 785 of the Code of Criminal Procedure.
 

 [2]
 

 . “In selecting a panel, names shall be drawn from the petit jury venire indiscriminately and by lot in open court and in a manner to be determined by the court.” LSA-C.Cr.P. Art. 784.
 

 [3]
 

 . “In parishes other than Orleans, the jury commission shall select impartially at least three hundred persons having
 
 *575
 
 the qualifications to serve as jurors, who shall constitute the general venire.
 

 “A list of the persons so selected shall be prepared and certified by the clerk of court as the general venire list, and shall be kept as part of the records of the commission.
 

 “The name and address of each person on the list shall be written on a separate slip of paper, with no designation as to race or color, which shall be placed in a box labeled ‘General Venire Box.’
 

 “After the jury commission has selected the general venire, it shall lock and seal the general venire box and deliver it to the clerk of court, as the custodian thereof.
 

 “The jury commission shall meet at least once every six months and when ordered by the court, and may meet at any time to select or supplement the general venire. The commission may select a new general venire at any meeting, and shall do so when ordered by the court.” Art. 408, C.Cr.P.
 

 [4]
 

 . Cf. State v. Watkins, 106 La. 380, 31 So. 10, wherein this Court stated: “ * * * We think the court may, in anticipation of the exhaustion of the regular panel, direct the sheriff to summon talesmen. That course was held authorized in State v. Monda, 39 La.Ann. 868, 2 South. 814, and we do not think the legal situation has been changed by the act of 1898. * * *” See, 17 La.L.Rev., pp. 693, 694; State v. Bouvy, 124 La. 1054, 50 So. 849.
 

 [5]
 

 . The per curiam of the trial judge recites :
 

 “Furthermore, the court is not aware of any law or statute which, would pre
 
 *579
 
 vent the uncle of the presiding judge from sitting on a trial jury merely by virtue of his accident of birth. There is absolutely no evidence whatsoever to the effect that the prospective juror, Clay de la Houssaye, was anything but a fair and impartial juror.
 

 “Furthermore, the basis for this Bill of Exception is the feeling of the defense attorney. This is not evidence.”