248 So.2d 295

**STATE of Louisiana, Appellee,**

**v.**

**Beatrice WILLIAMS, Appellant.**

No. 50861.

May 4, 1971.

Rehearing Denied June 7, 1971.

Hardy M. Parkerson, Lake Charles, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Frank T. Salter, Jr., Dist. Atty., James L. Babin, Asst. Dist. Atty., for plaintiff-appellee.

TATE, Justice.

The defendant was convicted of manslaughter, La.R.S. 14:31(1), and sentenced to five years in the state penitentiary. The defendant perfected six bills of exceptions, but abandoned three of them (Nos. 2, 3, and 6) on appeal. We find no error in the trial court's rulings complained of by the remaining bills (Nos. 1, 4, and 5).

### Bill of Exceptions No. 1

On the date the jury term commenced, the trial judge announced he had previously excused nine prospective jurors for cause. Before the first case was called for trial, he excused eleven others of the venire for cause (illiteracy, hard of hearing, ill, etc.). The minutes do not show the defendant was present.

When the defendant's case was called, her counsel objected to trial before a jury drawn from this panel, since a number of jurors had been excused out of her presence. She contends this violated her right to be present at every stage of the proceedings, including the calling and examination of the jury. La.Crim.P. Art. 831(3).

A trial court may excuse a member of the petit jury venire at any time prior to the time he is sworn as a juror to try a particular case. La.C.Crim.P. Art. 783. He may excuse members of the venire in advance of the time of trial, providing he does not abuse his discretion in this regard. Official Revision Comment (b), Article 783; State v. Ceaser, 249 La. 435, 187 So.2d 432 (1966).

A juror is not "called" or "examined" within the meaning of La.C.Crim. P. Art. 831(3), until he is called for examination in the trial of that particular defendant, see La.C.Crim.P. Art. 761. The defendant need not be present when the trial judge excuses prospective jurors before his own case is called for trial. State v. McGuire, 254 La. 560, 225 So.2d 215 (1969).

No abuse is here shown of the trial court's discretion to excuse prospective jurors in advance of the defendant's trial. The trial court correctly overruled the defendant's objection and permitted trial before a jury drawn from the reduced venire.

*Bill of Exceptions No. 4*

At the close of the State's case, the defendant moved for a directed verdict under La.C.Crim.P. Art. 778. This code provision states that the judge may direct the verdict "if the evidence is insufficient to sustain a conviction." The defendant objected to the trial court's denial of the motion and perfected a formal bill of exceptions (No. 4) to this ruling. A majority of this court adheres to the view that Article 778 is unconstitutional. State v. Hudson, 253 La. 992, 221 So.2d 484 (1969). The trial court properly denied the motion for directed verdict.[1]

*Bill of Exceptions No. 5*

The defendant moved for mistrial after the jury was shown a paper bag marked "murder".[2] The bag contained some of the exhibits. The defendant also (belatedly) objected to the admission into evidence of this bag.

Prior to the belated objection and motion for mistrial, the bag (S–22) and contents had been introduced in evidence and shown to the jury. The defendant's counsel had specifically stated, "No objection", when the bag was introduced. He did not object to its being shown to the jury until after the prosecutor had received permission from the court and had shown the bag to the jurors. After defense counsel made his (belated) objection, the court instructed the jury to disregard the writing on the bag as of no significance.

Under the circumstances, we are of the opinion that the defendant waived his right to object to admission of the evidence by not doing so before the bag was introduced and shown to the jury. La.Code Crim.P. Art. 841. Further, the admonition by the trial court to disregard as irrelevant the informal investigatory identification mark had the effect of curing what slight prejudice under the circumstances may have been caused the defendant.

*Decree*

The conviction and sentence are affirmed.

Affirmed.

BARHAM, J., concurs in the concurring opinion of TATE, J.

TATE, J., assigns additional concurring reasons.

---

1. This court has since followed *Hudson* on several occasions: State v. Holmes, 258 La. 221, 245 So.2d 707 (1971); State v. Square, 257 La. 743, 244 So.2d 200 (1971); State v. Braxton, 257 La. 183, 241 So.2d 763 (1970); State v. Douglas, 256 La. 186, 235 So.2d 563 (1970); and

State v. O'Brien, 255 La. 704, 232 So.2d 484 (1970).

2. The pencilled notation had been made for identification by a deputy sheriff during the investigative period, when the defendant was charged with "murder" rather than "manslaughter".

DIXON, J., concurs with the majority on Bills of Exceptions No. 1 and No. 5 and joins in the concurring opinion of TATE, J., on Bill of Exceptions No. 4.

TATE, Justice (concurring).

As organ for the majority, the writer upheld the trial court's denial of the motion for directed verdict on the basis of the unconstitutionality of the statutory provision, La.C.Crim.P. Art. 778, authorizing it as a criminal procedural device. This was on the basis of our earlier ruling in State v. Hudson, 253 La. 992, 221 So.2d 484 (1968).

However, speaking for himself and other concurring justices, the writer feels that State v. Hudson should be overruled as erroneous. A majority of the court does not agree at this time; although it may be fair to state that, without the barrier of our "precedent" in *Hudson*, on a fresh examination of the question a majority might not have agreed with it. The chief purpose of stating our views is to indicate reasons why the legislature or some future court may find no constitutional barrier to providing the useful procedural device of a motion for directed verdict in criminal cases.

In State v. Hudson this court, in 1969, sua sponte raised the question of the constitutionality of Article 778, authorizing directed verdicts. Such issue had not been raised nor pleaded, and, in fact, the holding was dictum because, as the trial court

noted, the evidence beyond a reasonable doubt made out a prima facie case against the defendants.

Our conclusion in *Hudson* that Article 778 is unconstitutional was based upon the provision of our state constitution that, in criminal cases, the jury "shall be the judges of the law and of the facts on the question of guilt or innocence, having been charged as to the law applicable to the case by the presiding judge." La.Const. Art. XIX, Sec. 9 (1921). The majority also relied upon the limitation by our state constitution to criminal review of "questions of law only". Article VII, Section 10.

In so concluding, our majority overlooked that whether the evidence is "sufficient to support a conviction", La.Code Crim.P. Art. 778, may present a question of law as well as a question of fact. Thus, in reversing a conviction of a misdemeanor, triable before a judge without a jury, we recently held that, *as a matter of law*, the trial court erred in failing to sustain a motion for a directed verdict. State v. Lopez, 256 La. 108, 235 So.2d 394 (1970). We held that, as a matter of law, the evidence did not support a conviction, where there was a total absence of evidence to prove the crime charged.

Similarly, in ruling on a motion for a new trial, the trial judge is under a duty to pass upon the sufficiency of the evidence to support the conviction. La.Code Crim.

P. Art. 851(1); State v. Daspit, 167 La. 53, 118 So. 690 (1928). As the many cases cited in *Daspit* show, the right of the trial court to grant a new trial due to insufficiency of the evidence has never been regarded as violating the state constitutional provisions [1] that the criminal jury shall be judge of the law and the facts. See also State v. Smith, 252 La. 125, 209 So.2d 729 (1968).

Furthermore, this court itself may determine, *as a matter of law*, that no evidence at all supports a jury conviction, and reverse a trial court's denial of a new trial. State v. Gatlin, 241 La. 321, 129 So.2d 4 (1961). In *Gatlin*, we summarized prior jurisprudence to such effect; we then reversed the trial court's denial of a directed verdict, annulled the conviction, and discharged the defendant in a misdemeanor conviction.[2]

The Louisiana constitutional provision is that the jury is the judge of the law and the facts on the question of guilt or innocence, *after* having been charged by the judge as to the law applicable to the case.[3] This presupposes that the facts themselves warrant application of the jury decisional process—that they present an issue of *fact* triable by the jury.

As noted, the state constitutional provision has never been interpreted as broadly as in *Hudson*. Such interpretation is not required by the constitutional article's function nor intent, and such interpretation is inconsistent conceptually and historically with its prior constructions and applications. See also Note, Criminal Procedure— Directed Verdict of Acquittal, 44 Tul.L. Rev. 594 (1970) and Note, Constitutionality of Directed Verdict, 30 La.L.Rev. 492 (1970).[4]

---

1. See La. Constitutions of 1879 (Art. 168), 1898 (Art. 179), and 1913 (Art. 179), as well as Art. XIX, Section 9, of the 1921 Constitution.

2. Any intimation in *Gatlin* that the legislature could not have provided a similar remedy in jury-trial cases was of course unnecessary to the decision. Likewise, intimations to such effect in State v. Broussard, 217 La. 90, 46 So.2d 48 (1950) were irrelevant to the issue before the court; this concerned an attempt by a defendant to urge a motion for a directed verdict at a time when the legislature had not authorized such motion in felony trials. The majority's reliance in *Hudson* upon the dictum in these opinions was thus misplaced.

3. La.Const. Art. XIX, Section 9 (1921): "In all proceedings or indictments for libel, the truth thereof may be given in evidence. The jury in all criminal cases shall be the judges of the law and of the facts on the question of guilt or innocence, having been charged as to the law applicable to the case by the presiding judge."

4. We have in several instances followed *Hudson* without re-examination of its rationale, but in each instance there the state had produced a prima facie case against the defendant. State v. Holmes, 258 La. 221, 245 So.2d 707 (1971); State v. Square, 257 La. 743, 244 So.2d 200 (1971); State v. Braxton, 257 La. 183, 241 So.2d 763 (1970); State v. Douglas, 256 La. 186, 235 So.2d 563 (1970). In State v. Barnes, 257 La.

Article 778, permitting a directed verdict in all criminal cases, was adopted as a procedural device by our 1966 Code. A primary purpose, in the light of national practice, is to avoid the burden to both state and defendant of unnecessarily prolonged trials, in instances where the the state does not make out even a prima facie case of guilt. Bennett Louisiana Criminal Procedure—a Critical Appraisal, 14 La.L.Rev. 11, 30–31 (1953). As stated at 5 Wharton, Criminal Law & Procedure, Section 2073, pp. 229–30 (12th ed., 1957), " * * * when there is no question for the jury to determine, it is neither necessary nor proper for the court to submit the case to the jury * * *."

At the time the new Code of Criminal Procedure (1966) authorized the directed verdict, a distinguished commentator noted that it will be available only where the prosecution completely fails to make out a case and that the trial court's discretion in the denial of a new trial will be reviewable only if no probative evidence at all supports conviction.[5] Bennett, the 1966 Code of Criminal Procedure, 27 La.L.Rev. 175, 217–18 (1967).

In the present instance, for example, the defendant moved for a directed verdict on the ground that the homicide had not been proved to have been "committed in sudden passion or heat of blood", one of the elements of manslaughter (as contrasted with murder's specific intent to kill). La.R.S. 14:31(1). The entire transcript of the state's evidence was properly attached to and made part of the perfected bill of exceptions.

The state's evidence showed that the defendant and her common-law husband were arguing when they came home, and that they continued their argument in the bathroom. The husband then came staggering out, stabbed.

Conceding for the argument that the hot blood as well as the killing must be proved, there was certainly probative evidence from which the jury could have concluded that the victim was killed by his wife in the heat of blood. As stated at 5 Wharton's Criminal Law and Procedure, Section 2073, p. 229 (12th ed., 1957): "When there is a conflict of testimony on any material issue in the case, each party is entitled to have the evidence in his favor submitted to the jury. Likewise, when the testimony is not in conflict, but diverse inferences may be derived from it, the case must be submitted to a jury for decision."

1017, 245 So.2d 159, 164 (1970, 1971), we noted with approval the trial court's ruling, based on its per curiam statement of facts, that "there was ample circumstantial evidence" of the crime charged; we did not rest our affirmance on the unconstitutionality of Article 778.

5. This is the standard of review applicable to the denial of new trials. See State v. Giangosso, 157 La. 360, 102 So. 429 (1924) and succeeding jurisprudence, as summarized in State v. Gatlin, 241 La. 321, 129 So.2d 4 (1961).

· We therefore concur in the majority's result, since the trial court properly denied a directed verdict. A reviewing court should not disturb the discretion of the trial court in denying directed verdicts unless there is a total lack of evidence produced by the state to prove the crime or an essential element thereof. But in such instances, as a matter of law, the evidence is insufficient to sustain a conviction, and a motion for a directed verdict should be sustained.