260 So.2d 914

**STATE of Louisiana**

v.

**Charles N. RILEY.**

**No. 52055.**

April 13, 1972.

R. Gray Sexton, Arnold J. Gibbs, Baton Rouge, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Sargent Pitcher, Jr., Dist. Atty., Donald L. Beckner, Asst. Dist. Atty., for plaintiff-appellee.

PER CURIAM.

The defendant, Charles N. Riley, was tried by a jury and convicted of attempted armed robbery. He was sentenced to serve five years at hard labor in the state penitentiary. La.R.S. 14:27 and 14:64. On this appeal, the accused is relying on nine bills of exceptions for reversal of the conviction. The nine exceptions argue, fundamentally, just two issues: that the in-court identification of the defendant was prejudiced by the trial judge's insistence that the defendant remain seated beside counsel; and, second, that the trial court erred by not granting a new trial when a juror falsely testified on voir dire.

Bills of exceptions numbers one and two argue the ruling of the trial court requiring the accused to sit with his attorney at the counsel table. The court ordered the counsel for the accused to call his client up to the counsel table from his position in

the back of the court room. Counsel for the accused then ushered up to the counsel table an unknown colored male and seated him next to the accused. The trial court stopped the proceedings again, and admonished counsel for the accused for his improper conduct. The court told counsel that a correct procedure would be to cross-examine the witness on the point of the alleged false identification, rather than having this unknown colored male seated at the counsel table during the trial of the case.

The state's attorney points throughout this position of a similar situation in State v. Morris, 259 La. 1001, 254 So.2d 444 (1971), as establishing a prohibition against seating the accused in the spectator section of the court room. This is not necessarily the result intended by that case.

 It is possible, as we emphasized in Morris, supra, under certain circumstances, not existing here, the trial judge might permit the accused, at his own request, to be seated in the spectator section of the court room. As this court said previously, "Just as the State may not resort to impermissibly suggestive procedures for in-court identification of a defendant during trial, defense counsel may not avail himself of procedures designed to unduly confuse or handicap a State witness called to identify the accused." State v. Morris, supra. The end results of our rulings on

the subject is that the trial judge, within the statutory guidelines, is to be accorded a wide discretion in the conduct of the trial with due regard to the facts and circumstances of each case. Since we find no abuse of discretion here, we shall not set aside the rulings complained of.

 Bills of exceptions numbers three, four, five and six, though not argued in brief by counsel, but submitted as formal bills to the court, deal with items of evidence introduced by the state during the trial. The defendant objected to the admissibility of a scarf and certain photographs as irrelevant and immaterial, although in argument admitting that the objections might go more to the weight. There is no serious contention as to their relevance, connecting the defendants with the commission of the offense. R.S. 15:441.

 Bill of exceptions number seven was taken as to the overruling of a motion for a directed verdict. Aside from the circumstance that there was evidence (aside from the victim's) connecting the accused with the armed robbery, this court has held that the motion for a directed verdict is not available as a procedural device under the circumstances shown. State v. Williams, 258 La. 801, 248 So.2d 295 (1971).

 Bills of exceptions numbers eight and nine were taken to the overruling of

motions for a new trial and motion in arrest of judgment, and to have the proceedings declared a mistrial. Defense counsel based these motions on the allegation that a prospective juror testified falsely on voir dire examination. On that examination, the juror had answered "No," when asked if he had ever been the victim of an armed robbery or attempted armed robbery. From the testimony developed in the hearing on these motions, we are convinced that the prospective juror did not testify falsely as to his previous experience as an owner of a filling station.

Counsel for the appellant asked the prospective juror the following:

"Q. Mr. Powers, during the time that you owned this filling station, was any attendant of yours employed or any representatives of yours ever the victim, or was the filling station itself as an entity ever the victim of a crime, to your knowledge?

"A. Yes, it was.

"Q. What sort of crime was it the victim of?

"A. Well, I don't know what you would call it, but—"

Further, (Tr. 18) the prospective juror, Mr. Powers, explains what crime occurred at his service station, as follows:

"A. I don't remember the time of day—I wasn't there. It was one of the men at the station and a car drove up at the pumps. I don't remember if he wanted gas or his tires checked. He got the distraction of the employee to work on his car, the man proceeded in the office or sales room and took money out of the cash register. It was a type that you open with your hands—no key or nothing. Went back and got in his car and drove off. The employee went in the station and saw the cash register open and the money gone, and that was it. No weapon, no nothing. That's exactly how it happened . . . but I wasn't at the station at the time it happened. No one has ever armed robbed me or anything with a weapon. I have never been armed robbed in my life."

We are convinced that the juror neither lied nor attempted to conceal facts from the court on voir dire. There is no merit in defendant's contention.

For these reasons, the conviction and sentence are affirmed.