275 So.2d 179 (1972)
STATE of Louisiana
v.
Gary SOUKUP.
No. 51977.
Supreme Court of Louisiana.
October 26, 1972.
On Rehearing March 26, 1973.
Anthony J. Bruscato and Albert E. Loomis, III, Bruscato & Loomis, Monroe, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Sp. Asst. Atty. Gen., Harry H. Howard, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., Gilbert T. Brown, Jr., Asst. Dist. Atty., for plaintiff-appellee.
PER CURIAM.
Defendant, Gary Soukup, appeals his non-jury conviction of the possession of marijuana in violation of La.R.S. 40:962, for which he was sentenced to serve one year imprisonment in the Ouachita Parish Jail. The defendant relies upon six bills of exceptions to obtain a reversal.
The first bill of exceptions was taken to the trial judge's overruling defendant's motion to suppress certain evidence on the ground that the search warrant under which the narcotics were found and seized by the police at the defendant's private quarters at 1005 Cole Avenue was invalid as having been issued upon information and belief and without probable cause. We disagree. The information supplied by the anonymous informant was based upon his personal observation and purchase of narcotics. This information and evidence was the basis of the affidavit and search warrant. The requirements of probable cause for issuance of the search warrant have thus been met. La.C.Cr.P. art. 162; State v. Holmes, 254 La. 501, 225 So.2d 1 (1969); State v. Carey, 256 La. 990, 240 So.2d 733 (1970). As to defendant's contention that *180 the search warrant was invalid for want of particularity of description of the premises because defendant occupied a separate residence therein, the record confirms that the premises described in the search warrant was a common dwelling and residence of three occupants, as was asserted in the affidavit, who had free access to all areas thereof.
Bill of Exceptions Nos. 2 and 6 both concern certain specific items of evidence gathered during the search, to wit: a coat (in which the marijuana gleanings were found) and two bottles of assorted pills. The defense objected to the introduction of the coat on the ground that no proof of defendant's ownership was adduced, and to the bottles of pills on the ground of irrelevancy. Later, on cross-examination, the defendant objected to questions concerning the coat and pills on the same grounds.
We find these arguments insubstantial. The bottles of pills were relevant to help identify the occupant of the room from which they were seized. Additionally, concerning the coat, we quote from the trial judge's per curiam,
"Although defendant later denied ownership or knowledge of it, another occupant of the house testified he had seen defendant wearing it; and it was observed to fit the defendant nicely when he was requested to put it on during the trial.".
Therefore the objection goes only to the weight and not to the admissability of this evidence. State v. Gladden, 260 La. 735, 257 So.2d 388 (1972).
Bills of Exceptions Nos. 3 and 4 both concern certain testimony of Ronald Silverman, who was present at the time of the search. Defendant Soukup was absent at the time of the search. The witness was called to the stand by the State for the apparent purpose of adducing additional evidence that Soukup occupied the specific bedroom and owned the coat. Upon refusal to do so, he was ordered by the Court to answer whether he knew where Soukup was living on the date of the search. Defendant objected that his cross-examination would be limited it the witness were forced to answer some questions but allowed to plead his privilege to others. Later, the same witness was not required to answer a question by defense counsel concerning Soukup's habits or frequency of absence from the common abode.
We agree with the following analysis of the trial judge:
"No information was given to the Court to demonstrate how the witness could possibly incriminate himself by stating where Soukup lived at a given time; and none was ever brought forth during the trial. However, once it was established that the house (in which the witness lived) was defendant's residence, then any revelation by the witness that indicated that Soukup was or had been frequently absent could well lead to the conclusion that the coat or the marijuana or both were his property and thus incriminate him. In short, one answer could not possibly incriminate the witness, but the other might."
Inasmuch as the defendant has no standing to complain of rulings concerning the claim of constitutional rights by others, these bills are without merit. State v. Willis, 260 La. 439, 256 So.2d 436 (1972).
Bill of Exceptions No. 5 was reserved to the trial judge's denial of defendant's motion for a directed verdict. This Court has held that our State Constitution precluded consideration of such a motion. LSA-Const. Art. 19, Sec. 9; State v. Williams, 258 La. 801, 248 So.2d 295 (1971).
Bill of Exceptions No. 7 was reserved to the failure of the trial court to grant a new trial on the grounds that the verdict was contrary to the law and evidence. This contention, standing alone, presents nothing for this Court's review. C.Cr.P. Art. 858; State v. Kennedy, 225 La. 295, 230 So.2d 818 (1970).
*181 For the reasons stated, the conviction and sentence are affirmed.
DIXON, J., dissents as to Bills 3 & 4, being of the opinion that defendant was denied the right of confrontation.
BARHAM, Justice (dissenting).
The defendant Gary Soukup was charged with possession of marijuana. The evidence establishing his possession consisted of gleanings of marijuana found in the pocket of a coat seized under a search warrant from one room of a house which was occupied by three students. The officers who made the seizure testified that the other occupants of the house stated at the time of the search that the room in which the coat was found was used by Soukup. For Soukup to be adjudged guilty of possession of marijuana it was necessary that the judge believe beyond a reasonable doubt (since it was a trial by judge without a jury) that the coat in which the gleanings were found was possessed by Soukup. Since Soukup did not have the coat on and was not even present at the time of the search and seizure, the trial judge had to find that by virtue of some circumstantial fact there was at least constructive possession of that coat by Soukup.
Ronald Silverman, one of the other students who occupied the house which was searched, was called to the stand by the State. Upon interrogation Silverman repeatedly took the Fifth Amendment. The trial judge permitted this witness to invoke the Fifth and refuse to answer certain questions propounded by the State and by the defense whenever the court thought it might incriminate the witness. But if the question, in the mind of the court, could not incriminate the witness and could incriminate the defendant, the witness was ordered to answer that specific question. The answers required of him by the court over his claim of the Fifth Amendment privilege brought forth the fact that Soukup had some connection with the coat in which the gleanings were found.
Defense counsel received Bill of Exceptions No. 3 to the court's ruling that the witness would be required to answer some questions but that the court would not require the witness to answer all questions or any questions where the answers might incriminate the witness. Bill of Exceptions No. 4 was reserved when on cross-examination the defense was not permitted to ask questions which would incriminate the witness and which, if incriminating, might exculpate the defendant. The trial judge in his per curiam justifies his rulings upon the basis that only the witness Silverman had any interest in invoking the Fifth Amendment privilege against self-incrimination. The trial court apparently never considered that this might be a denial of defendant's constitutional right of confrontation of the witness, which includes full cross-examination. See Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L. Ed.2d 934 (1965). But the trial judge's per curiam to the Bills of Exceptions Nos. 3 and 4 vividly shows that there was a denial of confrontation and that that confrontation went to the very kernel of the case:
"No information was given to the Court to demonstrate how the witness could possibly incriminate himself by stating where Soukup lived at a given time; and none was ever brought forth during the trial. However, once it was established that the house was the defendant's residence, then any revelation by the witness that indicated Soukup was or had been long or frequently absent could well lead to the conclusion that the coat or the marijuana or both were his property and thus incriminate him.
"In short, one answer could not possibly incriminate the witness, but the other might. Defendant had no standing to complain of rulings as to another's constitutional rights."
It is not necessary when an accused is denied his constitutional rights, such as *182 confrontation of a witness, to look for harmless error. However, the trial judge's per curiam itself establishes that this was not harmless error. Since the only evidence connecting the coat and the marijuana with Soukup was the fact that it was in a room also accessible to Silverman, and since the court readily admitted that testimony of Silverman "could well lead to the conclusion that the coat or the marijuana or both were his property", there is no doubt that this defendant was denied the right to confrontation on an important and relevant issue in the trial of this case. The denial of full confrontation was in fact extremely prejudicial, for the answers which would have been forthcoming could well have "convicted" the witness.
The ruling was prejudicial error, for without the pieces of testimony admitted under the ruling there could be no conviction. If this witness's testimony is excluded, there is nothing but rank, inadmissible hearsay which connects the defendant with the coat and the marijuana gleanings. All that remains to establish constructive possession is the hearsay given by the officers that parties in the residence at the time of the search and seizure identified the room where the coat was found as being the room occupied by Soukup. That hearsay falls outside all exceptions to the hearsay exclusionary rule.
Silverman's forced answers as to who occupied the room and whether there was any connection between the seized coat and the defendant are the only link between the marijuana and the defendant. This testimony was inadmissible, and its admission presents reversible error when defendant was denied the right to cross-examine and fully confront the witness. State v. Washington, 261 La. 808, 261 So.2d 224.
I respectfully dissent.

ON REHEARING
DIXON, Justice.
In a non-jury trial, defendant, Gary Soukup, was convicted of the violation of R.S. 40:962, the possession of marijuana. He was sentenced to one year imprisonment in the Ouachita Parish prison. Defendant appealed, relying on six bills of exceptions, and we affirmed the conviction on original hearing. A rehearing was granted to consider the merits of defendant's contention that he had been denied the right of confrontation.
Soukup and two other college age males lived in a three bedroom house in Monroe, Louisiana. Pursuant to a warrant, police officers searched the house for narcotics on April 13, 1970. The search produced a corduroy jacket found hanging in Soukup's room, in the pocket of which were found gleanings of marijuana. These gleanings form the basis of the charge against defendant.
At trial, it was necessary for the State to prove that Soukup intentionally and knowingly possessed the marijuana found in the pocket of the corduroy jacket. To prove the connexity between the marijuana and Soukup, the State relied upon the jacket's presence in Soukup's room and the testimony of Ronald Silverman, one of the other residents of the searched house.
Testimony adduced at trial indicated that Soukup was not present during the search and that he had been visiting in Houston, Texas during the week immediately preceding the search. The officers who searched the house testified that Soukup's room was open; that the jacket was found on a clothes rack located immediately inside the entrance to the room; and that the jacket was one of several jackets located in the room. Defendant and his witness testified that Soukup's room was always open and that it was often occupied by different persons during Soukup's absence. They also testified that Soukup was a tailor who often custom-made leather jackets. In order to tailor the leather jackets properly, Soukup would obtain a jacket from the customer. It was not unusual, then, for jackets belonging to other people to be located in Soukup's room.
*183 Because the State's other evidence was circumstantial only, Ronald Silverman's testimony was critical for the prosecution. On direct examination, Silverman[1] usually attempted to invoke the Fifth Amendment privilege against self-incrimination. When the court determined that the question would not incriminate him, Silverman was ordered to answer. In this manner, Silverman testified that he recognized the corduroy jacket as being related to defendant Soukup and, more specifically, he had seen Soukup wear the jacket.
During cross-examination, Silverman testified that the corduroy coat could have belonged to someone other than Soukup, and that he had seen other persons wear the corduroy jacket. However, to all other probative questions, Silverman invoked the Fifth Amendment. On cross-examination, Silverman was not required to answer questions concerning whether Silverman ever wore the corduroy jacket, whether Soukup, Silverman and the other resident of the searched premises regularly wore each other's clothing, whether Soukup was often absent from the searched premises, and the identity of the true owner of the corduroy jacket.[2]
Defense counsel reserved and perfected a bill of exceptions to the denial of his objection that the successful invocation of the privilege against self-incrimination during the cross-examination of Silverman denied Soukup his right to confrontation.
Both the Louisiana Constitution and the United States Constitution guarantee the accused in a Louisiana court "the right to be confronted with the witnesses against him." Article I, Section 9 of the Louisiana Constitution of 1921; Sixth Amendment to the United States Constitution; Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). Included in the right of confrontation is the right of the accused to cross-examine the witnesses against him. Douglas v. Alabama, supra, State v. Wright, 254 La. 521, 225 So.2d 201 (1969). Cross-examination is particularly important to an accused because it is the most effective truth producing procedure at his disposal.
Recently, in State v. Washington, 261 La. 808, 261 So.2d 224 (1972), this court was presented a situation quite similar to that in the instant case. In Washington, the State's principal evidence of guilt in an aggravated kidnapping prosecution was the confession of one Leroy Sterling, a coconspirator. On direct examination of Sterling, the prosecution would read a portion of his confession and would then ask him if he had made the statements which had been read. Although Sterling, who was being tried separately, refused to answer any of the questions, the prosecutor was thus able to get the entire confession before the jury. During cross-examination, Sterling refused to answer any questions on the ground that his answers would incriminate him.
On appeal, defendant's conviction was reversed, the court finding that defendant Washington had been denied his right to confrontation in that he had been unable to cross-examine Sterling as to the truth of his confession.
There is no meaningful distinction between the instant case and State v. *184 Washington, supra. In the instant case, Silverman's testimony was critical to the guilt or innocence of defendant Soukup. The State's other evidence, the presence of the marijuana gleanings in the jacket and the presence of the jacket in Soukup's room, indicated only circumstantially that Soukup had knowingly and intentionally possessed the gleanings of marijuana. Thus, when Silverman refused to respond to probative questions the answers to which might have tended to exonerate defendant, Soukup was denied the right of confrontation.
Defendant's conviction and sentence are reversed, and the case is remanded for a new trial.[3]
SUMMERS, J., dissents.
NOTES
[1] Although the record is not clear on this point, Silverman apparently had been charged with a narcotics violation at the time of the trial of Soukup.
[2] Silverman was allowed to refuse to answer the following questions on the ground that the answers would tend to incriminate him:

"Did you (Silverman) ever wear that (corduroy) coat?"
"All right, now during this month of April, wasn't it a habit of all of you all to exchange your various clothes, whether it was pants or jackets or anything?"
"Well now is it not unlikely or uncommon for Gary (Soukup) to be away from that 1005 Cole Avenue (his residence) on frequent occasions?"
"Why could it (the corduroy jacket) have been anybody elses coat (other than Soukup's)?"
[3] Defendant was convicted on circumstantial evidencethe presence of the marijuana in the pocket of a coat found in his room. Silverman's testimony that he had seen Soukup wear the corduroy jacket was also circumstantial evidence. R.S. 15:438 defines the burden of proof in circumstantial evidence cases as: "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." In State v. Brent, 248 La. 1072, 184 So.2d 14, 18 (1966), this court stated: "When the state has some direct evidence to support a conviction, the standard of proof required is beyond a reasonable doubt. The exclusion of every reasonable hypothesis of innocence is required only when the state relies solely on circumstantial evidence."

In this case the State's burden of proof was "the exclusion of every reasonable hypothesis of innocence." Although it is not clear which burden of proof was employed by the trial judge, the trial judge referred three times to the "beyond a reasonable doubt" burden of proof in his per curiam to the denial of defendant's motion for a directed verdict and his per curiam to the denial of defendant's motion for a new trial.