HAMLIN, Justice:
In the exercise of our supervisory jurisdiction, we directed Certiorari to Honorable Harwell L. Allen, Judge Ad Hoc of the Ninth Judicial District Court for the Parish of Rapides, State of Louisiana, for review of his ruling or judgment which denied identical Motions to Quash filed by the three defendants. Art. VII, Sec. 10, La. Const, of 1921. Subsequent to the ruling- or judgment of the trial judge, defense counsel objected and reserved a bill of exceptions.
*133 The events leading to the granting of this Certiorari are to the effect that on September 25, 1969, the Grand Jury of the Parish of Rapides returned an indictment against the three defendants which charged them jointly with the murder of Jessie Sanders on or about August 8, 1969. Counsel for the defendants filed identical motions on October 3, 1969, entitled, “Motion (1) Attacking the Constitutional and Stattory Legality, Sufficiency and Validity of the Rapides Parish Jury Commission, the Rapides Parish Grand Jury Panel, the Rapides Parish Grand Jury Which Indicted Defendant, and the Indictment Under Which This Prosecution is Being Conducted and (2) To Quash and Dismiss the Indictment.” On November 13, 1969, defendants filed identical motions, entitled, “Motion to Recuse Judge Guy E. Humphries, Jr., Judge A. M. D’Angelo and Judge Field v. Gremillion, Judges of the Ninth Judicial District Court, in Connection with the Pending ‘Motion to Quash etc.’ ” Judge Guy E. Humphries, Jr., Judge of the Ninth Judicial District, who was scheduled to preside over the trial of the Motions to Quash, supra, declined to recuse himself or submit the matter of his recusation to be heard by a judge of an adjoining district. This Court ordered Judge Humphries to appoint a judge from an adjoining judicial district to try the motions of recusation or show cause to the contrary in this Court, which directive he failed to follow. We exercised our supervisory jurisdiction, and we rendered an opinion and ordered Judge Humphries to appoint a judge from an adjoining district to try the Motions to Recuse. State v. Elie, 255 La. 767, 232 So.2d 507. On April 21, 1970, Judges Guy E. Humphries, Jr., A. M. D’Angelo and Field V. Gremillion recused themselves; Judge Harwell L. Allen thereafter tried the Motions to Quash and denied them.
In State v. Elie, 232 So.2d at 509, we succinctly summarized the basic allegations of defendants’ motions which attack the constitutional and statutory validity of the indictment returned against them as follows:
“ ‡ * * tjje ciistriet judges of the Ninth Judicial District, and in particular Judge Humphries, have by their actions, conduct, practices and procedures usurped the function and abrogated the duties and responsibilities of the Jury Commission in that, upon the instruction of Judge Humphries, with the concurrence of the other district judges, the Jury Commission used as its exclusive source of names in construction of the general venire (1) the names of all persons who were utility customers of Central Louisiana Electric Company, City of Alexandria and the Town of Boyce and (2) names appearing on the voter registration roll for Ward Six of Rapides Parish, with cards being prepared stating *135 the names and addresses of persons appearing thereon. All of these cards were placed in a container referred to as ‘a wheel’ from which the Jury Commission would draw a specified number of cards which they then submitted to the district judges, most often Judge Plumphries, for consideration to exclude, for various reasons, some of the names, with those who were not excluded being sent a questionnaire. Upon return of the questionnaires, one or more of the district judges and others acting with them determined through a screening process of the questionnaires whose name would be approved and then placed in the ‘wheel’; and it is only from the container of the names thus screened that the Jury Commission selected the general venire from which, ultimately, juries are selected, including the grand jury which indicted defendants.” [1]
The record discloses that two orders were directed to the Clerk of Court in and for the Ninth Judicial District Court. The order of March 2, 1964, recites;
*137 “COURT ORDER:
“TO: P. M. Dyer, Jr., Clerk of Court in and for the Ninth Judicial District, Parish of Rapides, State of Louisiana:
“You are hereby directed to convene the Rapides Parish Jury Commission, at a time convenient to you and to the said Commission, for the following purposes, to-wit:
“To place in the wheel cards containing the names and addresses of customers of Central Louisiana Electric Company, Inc., utility customers of the City of Alexandria, Louisiana, electricity customers of the Town of Boyce, Louisiana, and the voters of Ward Six, Rapides Parish, Louisiana;
“To purge the General Venire Box of all names presently contained therein;
“To reconstruct the General Venire Box, according to law;
“To draw from the General Venire Box the names of one hundred (100) persons to appear and serve as Petit Jurors for the week beginning Monday, March 23rd, 1064, at ten o’clock A.M.;
“To draw from the General Venire Box the names of one hundred (100) persons to appear and serve as Petit Jurors for the week beginning Monday, April 6th, 1964, at ten o’clock A.M.;
“To select from the General Venire Box the names of twenty (20) persons to appear and serve as Grand Jurors for the period beginning Monday, April 13th, 1964, at ten o’clock A.M.;
“To purge the Tales Jury Box of all names presently contained therein;
“To reconstruct the Tales Jury Box, according to law.
“Witness my hand, officially, at Alexandria, Louisiana, this March 2, 1964.
“[Sgd] Guy E. Humphries, Jr.
“Judge.
“Filed March 2nd, 1964,
“[Sgd] P. M. Dyer, Jr.
“Clerk of Court.
“Recorded at Criminal Minute Book No. 23, Page 617, on March 3, 1964.”
The order of April 9, 1968, directed to the Clerk of Court, recites:
“COURT ORDER:
“To: P. M. Dyer, Jr., Clerk of Court, Ninth Judicial District, Parish of Rapides, State of Louisiana:
“You are hereby directed to convene the Rapides Parish Jury Commission, at a time convenient to you and to the said Commission, for the following purposes, to-wit:
“To purge the Jury Wheel of all names presently contained therein;
“To place in the Jury Wheel new cards containing the names of utility customers *139 furnished by the Central Louisiana Electric Co., Inc., the City of Alexandria, Louisiana, electricity users of Boyce, Louisiana, and the Registered Voters of Ward Six, Rapides Parish, Louisiana;
“To draw from the Jury Wheel cards containing the names of three thousand (3000) persons for the purpose of sending questionnaires to determine their availability for jury service.
“Witness the Honorables, the Judges of said Court, at Alexandria, Louisiana, this April 9th, 1968.
“[Sgd] Walter M. Hunter
Walter M. Hunter, Judge.
“[Sgd] Guy E. Humphries, Jr.
Guy E. Humphries, Jr., Judge.
“[Sgd] A. M. D’Angelo,
A. M. D’Angelo, Judge.
“Filed April 9th, 1968
“[Sgd] P. M. Dyer, Jr.
“Clerk of Court.
“Recorded at Criminal Minute Book 26, . Pages 89 & 90, on
■'■'“April 11th, 1968”
F. Jean Pharis, District Attorney for the Ninth Judicial District in 1964, testified as to the reasons for the issuance of the order of March 2, 1964, as follows:
'■ “Q I meant to say 1964, I beg your pár- ■ don.
Yes, sir, I am familiar with the change in 1964. A
‘Q Do you know how that particular change came about, Mr. Pharis?
‘A Yes, sir, I do.
‘Q Will you state for the record what your recollection is as to how it came about?
‘A Well, it came about because the need was noted for a change in the jury selection procedure to broaden the base of persons from whom grand and petit juries are selected. The base was somewhat limited and because of decisions of the Supreme Court of this State and of the United States, it was evident to me that it was necessary that our procedure should be changed and so I took steps to bring about a change in that procedure.
‘Q Would you say, Mr. Pharis, that you in your official capacity as District Attorney, initiated the procedure which ultimately resulted in the change that took place ?
‘A I believe that’s right, I think I did initiate it, yes, sir.
‘Q Tell us what you did in that regard, please, sir.
‘A Well, I sought to have the — I consulted with the Clerk of Court who was on the Jury Commission and I *141 believe ex-officio chairman, if I’m not mistaken, of the Jury Commission, and advised him of my desire that the Jury Commission broaden its base of selection of prospective grand and petit juries and he was willing to accede to my request and asked that I follow through on it which I did. We discussed — I discussed the matter with different individuals, I don’t remember the names of all of the individuals with whom I discussed it. My assistants at the time are now Judge A. M. D’Angelo and Mr. Jules Davidson who is — and I’m sure that I discussed it with them, although I don’t have any independent discussions that I had with them. But then I sought to implement this broadening of the base from whom persons for the jury were selected by obtaining lists from various sources which were placed in a jury wheel or bin, from which the jury commission would draw a list of names.
‘Q Are you saying, Mr. Pharis, it was your decision and determination as to what list would be used for the purpose of drawing this base that you have described ?
‘A I believe I probably did, Mr. Gravel, decide what I thought the best procedure would be, the source from which I could get the greatest number of names.
'Q And the sources that- you determined were the utility lists of the Central Louisiana Electric Company ?
‘A- Well, before deciding that I sought information from the Chamber of Commerce about census figures and information of that sort and also considered whether or not any of those names would be available for use on — to represent the largest number of people in Rapides Parish and I though about voter registration list but this had lately, that is shortly prior to this time, seemed to have been represented by the Supreme Court and we tried to broaden all lists to include all types and classes of individuals and it was my considered judgment and I’m sure concurred in by others, that the best method was to get utilities lists from throughout this Parish in order to get the largest number of names possible. * * * Of course, one of the things that we were seeking to avoid was the purposeful inclusion or exclusion of persons of the colored race and from my experience I knew that there were no persons classified as colored who resided in Ward Six and I was certain that the voter registration list from *143 that Ward would not amount to either a purposeful inclusion or exclusion of persons of the colored race.
«$ * *
“Q Isn’t it fair to say, Mr. Pharis, that what you are testifying is that it was ' your judgment that this would be a good, base list that could be used but that there was really no statistical data of any kind that was obtained on any professional basis that would justify the conclusion as to what segments of the community constituted the names on the various utility lists ?
“A Well, of course I knew that Rapides Parish was composed of a population of a hundred percent and I had reliable information from either the utilities company or the Chamber of Commerce that ninety five percent of the householders of this Parish were served by these utilities services, except Ward Six, of course, and so I felt like that that would be the broadest possible base that could be obtained' for — obtaining persons for jury service.”
Judge Guy E. Humphries, Jr. testified that he had been a judge of the Ninth Judicial District Court since September 8, I960. With respect to the change in jury selection in 1964, he testified:
“A Well of' course the decisions by the Federal Coürts brought about the change. I don’t recall the decision, but it was a case that came out of Jennings, Louisiana, where the 5th. Circuit held that an intentional inclusion of a person of the negro race was an unconstitutional constituted Jury, so there was some concern by the officials here including the District Attorney and the Judges about our Jury selection method, and also I had quashed a Grand Jury indictment on the grounds that there was systematic exclusion of the Grand Jury. Those factors precipitated the change, and so it was determined that we should have to make a change. So we went about — everyone was concerned about it, adopting a procedure to recommend to the Jury Commission that would be all inclusive, and would be legal and constitutional, and would give a defendant a cross section Jury of his peers.
“Q What particular system to your knowledge, Judge Humphries, was actually adopted? • That is what base was actually adopted for the purpose of providing names from which would be selected those names that would be placed on the General Venire list?
“A To use the names of persons who were users of the utilities of the City of Alexandria, Central Louisiana Electric Company, of the City of Boyce, and those who were registered voters in Ward 6.
*145 “Q Do you know how the determination came about that those would provide the base lists from which the selections would be made ?
“A Initially ?
"Q Yes, sir.
“A No, I don’t, I can tell you the person that suggested the thing to me. J do remember that person.
“Q Who was that, sir?
“A Mr. Jules Davidson.
"Q He at that time was Assistant District Attorney?
“A He was.
“Q Now after that suggestion was made, what if anything did you as a Judge in your official capacity do to assist in putting into effect this plan that was ultimately adopted by the Jury Commission?
“A Well of course I gave it a lot of consideration and discussed it with the other Judge at that time, I believe it was Judge Walter Hunter — there, were just two Judges at the time, and we discussed the procedure with the District Attorney, with members of the Bar, as a matter of fact we had a meeting with the Bar Association at which time the plan was presented to the members of the Bar — If they thought that it were legal and Constitutional, and if not to let us know what it was, because we were going to present it to the Jury Commission and suggest and recommend that they adopt it — adopt that procedure. Also a questionnaire was prepared, mostly by myself, doing at least the * * * ” (Emphasis supplied.)
The above described method of jury selection was put into effect in 1964; except for purging in 1968, the system remained operative through the term of office of the Grand Jury which indicted defendants. Thereafter, in 1969, a new system which employed voter registration lists was put into effect by the Jury Commission.[2]
*147 The contested procedure for jury selection employed by the Jury Commission for Rapides Parish was in substance as follows: The Jury Commission would take all of the names from the utility lists of Central Louisiana Electric Company, the City of Alexandria Utility Company, the Gas Company at Boyce, and the Ward 6 Voter Registrations and place them into a large barrel-like container called “the wheel.” It would then from time to time draw several hundred names from the container and thereafter direct that the persons whose names were drawn be mailed a. questionnaire for the purpose of determining whether they were qualified for jury service. The names of those persons who were qualified, excluding those claiminjg valid exemptions, were placed and sealed in a large metal container, and the Venire'lists emanated from these names. When the job of screening became too burdensome for the Clerk of Court, it was delegated to clerical help. Without further discussion and recitation of the lengthy testimony of record, we say here that we find that the entire screening operation was performed, under the direction of the Jury Commission ■ of which the Clerk of Court was a member.
The .trial judge did not render written reasons for upholding the system, supra, and denying the Motions to Quash. Therefore, in the light of constitutional and statutory law and the jurisprudence, we shall consider the following errors which counsel for the defendants assigned to the ruling or judgment of the trial judge:
1. The trial judge erred in failing to hold that the function of the Jury Commission was usurped, and that their duties and responsibilities were abrogated by Judge Humphries’ March 2, 1964 Order.
2. The trial judge erred in failing to hold that the function of the Jury Commission was usurped, and that their duties and responsibilities were abrogated as a result of procedures whereby persons other than Jury Commissioners determined (through a screening process of questionnaires submitted to prospective jury veniremen) whose names would be approved and placed in a container of names to be used as the sole source for the selection of the General Venire from which, ultimately, juries were selected, including the Grand Jury which indicted defendants.
3. The trial judge erred in failing to rule that the burden shifted to the prosecution to show an absence of purposeful discrimination once it had been shown that there was a disparity between the number of members of a minority group *149 qualified to be included in the General Venire List and those actually included on the General Venire List or the juries selected therefrom.
Sec. 41 of Art. VII, La.Const. of 1921, provides in part that the Legislature shall provide for the election and drawing of competent and intelligent jurors for the trial of civil and criminal cases. Sec. 9 of Art. I, La.Const. of 1921, provides in part that no person shall be held to answer for capital crime, unless on a presentment or indictment by a grand jury. Article 404 of the Code of Criminal Procedure prescribes that in parishes other than Orleans, the Jury Commission shall consist of the Clerk of Court or a Deputy Clerk designated by him in writing to act in his stead in all matters affecting the Jury Commission, and four other persons appointed by written order of the district court, who shall serve at the court’s pleasure.[3] Article 408 of the Code of Criminal Procedure recites :
“In parishes other than Orleans, the jury commission shall select impartially at least three hundred persons having the qualifications to serve as jurors, who shall constitute the general venire.
“A list of the persons so selected shall be prepared and certified by the clerk of court as the general venire list, and shall be kept as part of the records of the commission.
“The name and address of each person on the list shall be written on a separate slip of paper, with no designation as to race or color, which shall be placed in a box labeled 'General Venire Box.’
“After the jury commission has selected the general venire, it shall lock and seal the general venire box and deliver it to the clerk of court, as the custodian thereof.
“The jury commission shall meet ..at least once every six months and when ordered by the court, and may meet at any time to select or supplement the general venire. The commission may’ select a new general venire at any meeting, and shall do so when ordered by the court.” Source, Former LSA-R.S. 15 :- 179, 15:177; 13:3045.
Article 419 of the Code of Criminal Procedure provides that a general venire, grand jury venire, or petit jury venire shall not be set aside for any reason unless fraud has been practiced or some great wrong corn *151 mitted that would work irreparable injury to the defendant.[4]
In Brooks v. Beto, 366 F.2d 1 (1966), certiorari denied, 386 U.S. 975, 87 S.Ct. 1169, 18 L.Ed.2d 135, the United States Court of Appeals, Fifth Circuit, at 366 F. 2d 23, said:
“To fairly represent the community, there must be an awareness of the makeup of that community. Even random selection from broad lists, such as voter registration records, city directories, tax rolls, public utility customer lists, and the like, inescapably requires a basic preliminary test: do each, or all, or some, .give a true picture of the community and its components? Of course that condition precedent may be satisfied only by testing this 'sample’ against the known components — racial, economic, sociological, educational, etc. It is inevitable, therefore, that jury selectors be conscious of those components. And where identifiable racial groups are significant elements, that means there must be an awareness of race as such.” See, State v. Poland, 255 La. 746, 232 So.2d 499 (1970); State v. Marks, 252 La. 277, 211 So.2d 261 (1968).
Judge Humphries’ order of March 2, 1964, supra, was issued after extensive study by interested persons and groups who *153 were necessarily concerned with the mandate. The testimony of record reflects that Judge Humphries was neither the originator nor the sole affirmant of the order. The testimony, supra, reflects that the method of jury selection ordered in 1964 did not originate with the Jury Commission, but the law and jurisprudence, supra, do not require that a Jury Commission invent a procedure for jury selection. The system employed by the Jury Commission in jury selection in 1964 and in the years following was neither disapproved nor rejected by action of that body. The Clerk of Court, a Member of the Jury Commission, carried out the order of Judge Humphries, delegating clerical duties. Thus, there was no usurpation of the functions, duties, and responsibilities of the Jury Commission.[5] Judge Humphries merely put in motion a system which proved expedient at the time of its inception and for some years thereafter.
We found, supra, that the screening of prospective jurors was performed by clerical help under the direction of the Jury Commission. The testimony of record is abundant and clear that it would have been impossible for the Members of the Jury Commission to have done the physical work of sending out questionnaires and recording their answers. In order to produce efficiency, this work was delegated; thus, there was no usurpation of the functions of the Jury Commission. We conclude that the delegated procedure employed for screening did not constitute an abrogation of duties and responsibilities by the Jury Commission. With respect to Specification of Errors No. 3, defense counsel state in brief:
“With respect to the exclusion of legally cognizable classes, categories and groups from the General Venire List and the Grand Jury which indicted defendants, Judge Allen, at the conclusion of the Motion to Quash, ruled that although *155 the defendants' had shown a disparity between' the percentage of members of their minority race on the General Venire List and in the population at large in Rapides Parish, that the defendants had nonetheless failed to bear their burden and show purposeful and willful discrimination and exclusion of that minority group by the Jury Commission. It is respectfully submitted that under the holding of Whitus v. Georgia, 385 U.S. 545; 87 S.Ct. 643 [17 L.Ed.2d 599] (1967), and Jones v. Georgia, 389 U.S. 24, 88 S.Ct. 4, 19 L.Ed.2d 25 (1967), that the burden had shifted to the prosecution to show an absence of purposeful discrimination once it had been shown that there is a disparity between the number of members of a minority group qualified to be included in the General Venire List and those who are actually included on the General Venire List or the jury selected therefrom.”
Initially, we find that no fraud on the part of the Jury Commission exists herein. Fraud was not alleged, and counsel for the defendants stated in this Court that fraud was not an' issue in the matter.
 A reading of the testimony of record convinces us that defendants did not show that rmder the facts and circumstances existing in Rapides Parish in 1964 and up until the time of the adoption, of a new system of jury selection by the Jury Commission in 1969 that the persons whose names were used by the Jury Commission for jury selection did not fairly represent the community. “Representation must be the product of either ‘the operation of an honest exercise of relevant judgment or the uncontrolled caprices of chance.’ Cassell v. State of Texas, supra, 339 U.S. at 291, 70 S.Ct. at 633, 634, 94 L.Ed. at 849 (Frankfurter, J., concurring).” Brooks v. Beto, 366 F.2d 1 at p. 14. They did not show that the Jury Commission was not conscious of the community’s racial elements; they did not show purposeful inclusion or exclusion of persons of minority races on the venire lists. “Although a Negro defendant is not entitled to a jury containing members of his race, a State’s purposeful or deliberate denial to Negroes on account of race of participation as jurors in the administration of justice violates the Equal Protection Clause.” Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759. Defendants did not prove any denial to minority groups of jury participation. The law presumes the composition of jury venires to be fairly drawn from a cross section of the community unless the party complaining establishes otherwise. State v. Ceaser, 249 La. 435, 187 So.2d 432 (1966).
Whether the Jury Commission discriminates .against Negroes in the formation of jury' bodies is a question of fact, and the defendant bears the burden of prov *157 ing such discrimination. State v. Goree, 245 La. 389, 158 So.2d 203. The question of what constitutes a sufficient showing of intentional discrimination in jury selection is one of fact, varying in its solution with individual cases, and the burden of establishing racial discrimination rests upon the accused. State v. Barksdale, 247 La. 198, 170 So.2d 374, 384 (1965), Cert. denied, 382 U.S. 921, 86 S.Ct. 297, 15 L.Ed.2d 236. “The cases of Coleman v. Alabama, 389 U. S. 22, 88 S.Ct. 2, 19 L.Ed.2d 22, and Jones v. Georgia, 88 S.Ct. 4, 389 U.S. 24, 19 L.Ed. 2d 25, do not sustain the defense contention that the mere establishment of a disparity between the number of Negroes on the venire list makes a prima facie case of discrimination that must stand where not rebutted by the state.: . * * * , State v. Poland, 255 La. 746, 232 So.2d 499, 505 (1970). “The burden is, of. course, on the petitioners to prove, the existence of purposeful discrimination, Tarrance v. State of Florida, 188 U.S. 519, 23 S.Ct. 402, 47 L.Ed. 572 (1903). However, once a prima facie case is made out the burden shifts to the prosecution.” Whitus v. State of Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed. 2d 599.
We do not find that the defendants herein have made out a prima facie case. They have not shown that any great wrong was committed by the instant method of jury selection which worked irreparable injury to them, Art. 419, LSA-C.Cr.P., supra; they have not proved any denial of their rights, privileges, and immunities. Defendants are entitled to a valid presentment by a validly constituted Grand Jury, State v. Gendusa, 190 La. 422, 182 So. 559, but defendants have not made a showing that the Grand Jury which returned the indictment against them was not validly constituted. We conclude that the burden of proof did not shift to the State, and that the case of Jones v. Georgia, 389 U.S. 24, 88 S.Ct. 4, 19 L.Ed. 2d 25, is not apposite.
The Minutes of the trial court of August 4, 1970, read, “Court- ruled that the Motion to Quash, filed in each of the three cases, is denied.”
For the reasons assigned, the ruling of the trial court denying the Motions to Quash filed by the three defendants is affirmed.
BARHAM and TATE, JJ., concur in result.

. In their Motions to Quash, defendants averred:
“28. The course of conduct, practices and procedures followed by the Rapides Parish Jury Commission, the District Judges and others acting with and for them during at least the past five years which have resulted in
“(a) the designation and appointment of members of the Parish Jury Commission ;
“(b) the selection by the said Commission and Judges of the lists of names from which the Grand (including the one which indicted Defendant) and Petit Juries have been selected; and
“(c) the selection by the Commission and Judges of the names of those constituting the General Venire List from which Grand Jurors have been selected are and have been discriminatory, arbitrary, capricious, unreasonable, unfair, illegal and unconstitutional and particularly in violation of the statutes and Constitutional provisions hereinabove set forth; the appointments, selections, procedures and course of conduct (including, in some instances, systematic inclusion, contrary to law, of members of those classes, categories and other legally cognizable groups named in Article 18) followed by and with respect to the Jury Commission, the Grand Jury, the Petit Jury and the General Venire Lists for a period, of at least five years prior to the date hereof, and up to and including the present, have resulted in the systematic exclusion of eligible persons from said Commission, juries and lists and especially members of those classes, categories and groups named in Article 18.
“29. The foregoing has resulted and will result in a denial to Defendant of his rights, privileges and immunities under the laws of Louisiana, the Constitution of Louisiana and the Constitution of the United States of America, as, in part, hereinabove set forth; more specifically, he has been denied his rights to be in-dieted and tried by fair and impartial juries selected from and representative of a fair cross section of Rapides Parish and to be accorded his fundamental rights, among which are the right to due process of law, equal protection of the laws, and the other statutory and constitutional rights, privileges and immunities set forth and guaranteed in the hereinabove quoted provisions from the laws of Louisiana and from the Constitutions of this State and of the United States of America.”

. Judge Field V. Gremillion, a Judge of the Ninth Judicial District Court since March 10, 1969, testified as follows:
“Q. Judge Gremillion, do you know the reason why a change was made from the system that had been used to the system that is presently employed?
“A. 'The old system involved the list of utility subscribers the people who get bills for utilities, it involved a giant- squirrel cage wheel from which names were drawn and as I understood, questionnaires were sent out to possibly eliminate from the list people who couldn’t serve, either physically or for reasons the law gave them excuses for not serving and it was felt that due to the change in the matter in which people registered and which the registration rolls were kept, that a better overall representation of the Parish could be obtained from — resort to registration rolls.
“Q. Would it be correct to say, Judge, that it had been concluded' that: the system that was being used was. unsatisfactory ?
*147 '“MR. WARE: I am going to object, Y'óúr'tíonor, —, that’s all right, go ahead and'áiiswér it.
“A. No, I don’t think that it was unsatisfactory, just so cumbersome that using the registration rolls was better, more efficient.”

. Former LSA-K.S. 15 :175, tlie source of Art. 404, La.C.Cr.P., recited: “Distrct judges shall select and appoint in each parish five qualified electors, good men and true, able to read and write the English language, who, with the clerk of the district court, or in case of his inability to act for any cause, his chief deputy, as a member thereof ex officio, shall .constitute a jury commission for said parish and shall hold their office during the pleasure of the district judge, * * * ”

. Former LSA-R.S. 15 :203, the source of Art. 419, La.C.Cr.P., provided: “It shall not be sufficient cause to challenge the , venire selected for any session of the court or portion thereof or for service at any time in any parish or district of this state, or to set aside the venire, because some of the jurors on the list are not qualified to act, nor because of any other defect or irregularity in the manner of selecting teh jury, or in the composition, summoning or proceedings of the jury commission, unless some fraud has been practiced or some great wrong committed that would work irreparable injury; provided, that it shall be good ground to challenge, for cause, any juror who is not qualified by law to act.”
The Official Revision Comment to Article 419 of the Code of Criminal Procedure states:
“(a) The principle of Art. 203 of the 1928 Code of Criminal Procedure and of this article is a very important one, for it prevents frivolous attacks upon venires resulting from good faith efforts by jury commissions to comply with legal requirements for selecting juries. There is considerable jurisprudence interpreting former Art. 203.
“For examples of the cases, see State v. Murphy, 234 La. 909, 102 So.2d 61 (1958), cert. denied, 357 U.S. 930, 78 S.Ct. 1376, 2 L.Ed.2d 1373 (1958), in which the Louisiana Supreme Court held that the defendant’s motion to set aside the jury panel and to challenge the petit jury venire on the basis that the box from which the venire was chosen contained less than 750 names did not specify such an irregularity, even if true, as would warrant quashing the petit jury venire; and State v. Dallao, 187 La. 392, 175 So. 4 (1937), appeal dismissed, 302 U.S. 635, 58 S.Ct. 51, 82 L.Ed. 494 (1937), rehearing denied, 302 U.S. 777, 58 S.Ct. 138, 82 L.Ed. 601 (1937), where it was held that the nonattendance at court of some of the petit jury veniremen for unforeseen cause did not entitle the defendants to set aside the petit jury venire in the absence of some showing of fraud or that a great wrong had been worked on the defendants.
“ * * * ”

. P. M. Dyer, Jr., Clerk of Court, testified that he had served as Clerk of Court since 1955, and that in 1963 and 1964 he was an ex-offieio Member of the Jury Commission. With respect to the system inaugurated in 1964, he testified:
“Q Now did you yourself have anything to do with bringing about the change, was it your recommendation?
“A Well, I would’nt say it was my recommendation, there was some talk at first of using the registrar of voters registration list and at that time X think there was some cloud on the registrar’s office here in Rapides Parish so we decided not to do that, my feeling is that with the Court in reference to the change, I dealt primarily with Judge Humphries who seemed to be the spokesman for the Court as a whole and — I don’t know exactly who — I don’t think I did personally dream up the idea of using utility users, if that’s what you mean.
“Q Would it he reasonably correct to say that that particular time that the District Attorney and District Judges, other including members of the Alexandria Bar Association, came up with a recommendation that resulted, to the Jury Commission, that resulted in the change ?
“A That is true. That is correct.”