338 So.2d 665 (1976)
STATE of Louisiana
v.
James E. BADON and Herman M. Thomas.
No. 58009.
Supreme Court of Louisiana.
October 6, 1976.
Rehearing Denied November 5, 1976.
*666 Craig J. Cimo, Gretna, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Gretna, Abbott J. Reeves, Director, Research and Appeals Division, Metairie, for plaintiff-appellee.
SANDERS, Chief Justice.
The defendants, James E. Badon and Herman M. Thomas, were charged under LSA-R.S. 14:64 with the armed robbery of Clifton Rivet. On February 25, 1975, their trial ended in a hung jury. A second trial *667 was held, but it too ended in a mistrial. Finally, on June 18, 1975, a jury returned a unanimous verdict of guilty as charged as to both defendants. James Badon was sentenced to thirty-three years imprisonment under the provisions of the Louisiana Habitual Offender Law, LSA-R.S. 15:529.1. The court sentenced Herman Thomas to ten years imprisonment at hard labor.
The defendants appeal from these convictions and sentences.

ASSIGNMENT OF ERROR NO. 1 (Badon) ASSIGNMENT OF ERROR NO. 2 (Thomas)
Both defendants assign as error the procedure used by the trial judge during the voir dire examination whereby he explained to prospective jurors certain legal concepts later included in the judge's general charge. The defense asserts that these remarks constituted a premature charge of the law by the judge, and as such deviated from the normal order of trial as prescribed by Louisiana Code of Criminal Procedure Article 765.
In his Per Curiam, the trial judge explained his procedure as follows:
"Article 786 of the Code of Criminal Procedure directs itself to the examination of jurors upon voir dire. It reads in part:
The Court, the State, and the defendant shall have the right to examine prospective jurors. The scope of the examination shall be within the discretion of the Court.
"Thus, the voir dire examination is a joint undertaking of the Court, District Attorney and defense counsel. It is designed to discover bases for challenges for cause (and to secure information for an intelligent exercise of peremptory challenges) State v. Sheppard, 1972, [263 La. 379], 268 So.2d 590. One of the bases for challenging a juror for cause is that the juror will not accept the law as given to him by the Court. C.Cr.P. Art. 797(4).
"It is the opinion of this Court that in order to determine whether or not a juror will accept and apply the law as given by the Court it is necessary to inform the jury on certain general principles of law which are applicable to all criminal trials. Thus the Court instructed the jury panel, among other points, as to the presumption of innocence, proof of guilt beyond a reasonable doubt, and the filing of a bill of information is not to be considered evidence, and as to the defendant's right against self-incrimination."
In light of these reasons, we find no abuse of the trial court's discretion in the preliminary explanation of the basic legal concepts to the prospective jurors.

ASSIGNMENT OF ERROR NO. 2 (Badon) ASSIGNMENT OF ERROR NO. 3 (Thomas)
This assignment of error is concerned with the propriety of the court's denying defendant's motion for a mistrial. Both defendants base their motions on the fact that 52½% of the total number of jurors subpoenaed did not appear. They aver that due to this high rate of absenteeism, they were denied a trial by a fair cross section of the community, and thus were deprived of a fair and impartial trial as required by the Sixth and Fourteen Amendments to the United States Constitution.
When the defense's allegations of prejudice caused by the absenteeism is not substantiated by any evidence proffered as proof of that fact, the court's denial of the motion for a mistrial is not error. State v. Bluain, La., 315 So.2d 749 (1975); State v. Elie, 257 La. 130, 241 So.2d 515 (1970); State v. Ceaser, 249 La. 435, 187 So.2d 432 (1966).
In State v. Dallao, 187 La. 392, 175 So. 4 (1937), U.S. cert. denied 302 U.S. 635, 58 S.Ct. 51, 82 L.Ed. 494 (1937), this Court set forth the controlling principles as follows:
"The law presumes the legality of an array or a venire and he who asserts the contrary must prove it. State v. Gonsoulin, 38 La.Ann. 459; State v. West, 116 La. 626, 40 So. 920; State v. Bussa, 176 La. 87, 145 So. 276. No proof was offered by defendants to rebut this presumption.

*668 The mere circumstances that fifteen veniremen were unavailable for the trial of defendants is not sufficient to overcome the presumption that they were competent jurors when their names were placed in the jury wheel perhaps many months before.
"In the trial of every criminal case, the nonattendance of some of the veniremen for unforeseen causes is to be expected. It is something that no human foresight can provide against, but it can never become serious, unless it can be shown that fraud has been committed or that a wrong has been worked on the defendant. Such is not the case here."
Based on these principles, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 3 (Badon) ASSIGNMENT OF ERROR NO. 4 (Thomas)
Through this assignment of error the defendants direct the Court's attention to the trial court's refusal to give a special charge submitted by the defense, explaining to the jury that they are not required to reach any one of the responsive verdicts given, and that if they failed to do so, this would result in a hung jury and a mistrial.
Louisiana Code of Criminal Procedure Article 807 mandates the court to give a special charge if it is wholly correct, pertinent, and does not require qualification, limitation, or explanation. There is, however, an exception built into the article which states:
"It need not be given if it is included in the general charge or in another special charge to be given."
Although the court's general charge omitted an explanation of the consequences of a hung jury, the jury was instructed that each juror has the obligation to arrive at and adhere to a verdict which squares with his conscience, and that this verdict should not be abandoned simply because he was outnumbered by other jurors entertaining a contrary opinion. A review of the general charge and the submitted special charge satisfies us that the proposed jury instructions were adequately included in the general charge. This holding follows the decisions in State v. Ross, La., 320 So.2d 177 (1975) and State v. Williams, La., 310 So.2d 528 (1975), both of which rejected similar proposed charges in light of the general charges given.

ASSIGNMENT OF ERROR NO. 4 (Badon)
Prior to the close of defense's case, Badon's counsel moved for a mistrial on the ground that a key defense alibi witness who had been timely subpoenaed could not attend the trial due to his alleged hospitalization. (No evidence was brought forth to prove if he was in fact confined to a hospital or if he was even ill.) The authority relied on is Louisiana Code of Criminal Procedure Article 775 which permits a mistrial to be ordered when
"(5) It is physically impossible to proceed with the trial in conformity with law;"
It is thus asserted that to conduct this trial in compliance with the law would be impossible in that the defendant would be denied his Sixth Amendment right to compulsory process.
Defense counsel makes much of the fact that the State was granted a mistrial on a prior occasion, because one of its crucial witnesses was unable to attend trial due to illness. In denying the motion the judge distinguished the factual circumstances in each instance. When the prior mistrial was granted, the jury had not yet been impanelled nor had any testimony been taken, whereas, the motion here was made minutes before the defense rested. Consideration was also given to the fact that this was the third attempt to have these defendants stand trial since twice previously mistrials had occurred. Of greater moment to the judge was the fact that he stood ready to grant a continuance until the following day in order to allow the defense the opportunity to produce the absent witness or to call someone from the hospital to verify the witness' inability to appear. In his Per Curiam, the trial judge stated that he concluded *669 the declaration of a mistrial would have been inappropriate, especially since the defendant refused to take advantage of his offer of a continuance. We agree.
We find no merit in this assignment of error.

ASSIGNMENT OF ERROR NO. 5 (Badon) ASSIGNMENT OF ERROR NO. 6 (Thomas)
In these assignments of error, the defendants argue that prejudicial error was committed when the trial judge refused to grant the defense a mistrial, based on a violation of the witness-sequestration order. LSA-C.Cr.P. Art. 775.
The conduct complained of surfaced when, on the State's rebuttal, testimony was elicited from the State's witness that the sequestration order was violated. The testimony disclosed that this violation occurred after two of the State's witnesses, Deputy Seur and Deputy Lee, left the courtroom under a sequestration order and Deputy Seur remarked to Deputy Lee that he remembered no one on the street at the time of the commission of the crime. Deputy Lee then remarked that he recalled this fact also. Both deputies subsequently testified that Joe Louis's Bar was closed, that no lights were on, no cars in front, and no one standing outside the bar. This rebuttal testimony contradicted that of the alibi defense witness, Alberta Marks, who testified that she saw and spoke to both defendants on the side of Joe Louis's Bar at the time in question. The rebuttal testimony had not been adduced at the previous trial.
It is well established that Louisiana Code of Criminal Procedure Article 764, providing for the exclusion and conduct of witnesses, vests discretion in the trial judge as to the disqualification of a witness when a sequestration order has been violated. State v. Batts, La., 324 So.2d 415 (1975); State v. Holmes, La., 305 So.2d 409 (1974); State v. McKinney, La., 302 So.2d 917 (1974); State v. Bradford, La., 298 So.2d 781 (1974); State v. Browning, La., 290 So.2d 322 (1974); State v. Lewis, La., 288 So.2d 324 (1974).
In State v. Raymond, 258 La. 1, 245 So.2d 335 (1971), this Court defined the purpose of Article 764 as follows:
"The purpose of this Article is to prevent witnesses from being influenced by the testimony of prior witnesses and to strengthen the role of cross-examination in developing the facts."
Both officers who violated the order stated that their testimony was from their own memory. The cross-examination was thorough and disclosed no indication of collusion or fabrication.
We conclude that the trial judge did not abuse his discretion in allowing the officers to testify.

ASSIGNMENT OR ERROR NO. 6 (Badon) ASSIGNMENT OF ERROR NO. 1 (Thomas)
Both defendants assign as error the court's denial of their request to depose witnesses prior to trial. They assert that their right to confront witnesses and to have compulsory process for obtaining them as guaranteed by the Sixth Amendment to the United States Constitution and Article 1, Section 16 of the Louisiana State Constitution was abridged.
The identical issue was raised by the defendant in State v. Morgan, La., 315 So.2d 632 (1975). There, the Court held that the confrontation secured to all defendants by the constitution is confrontation at the trial, itself, and not prior thereto. See also State v. Whitsell, 262 La. 165, 262 So.2d 509 (1972); State v. Wright, 254 La. 521, 225 So.2d 201 (1969).

ASSIGNMENT OF ERROR NO. 7 (Badon) ASSIGNMENT OR ERROR NO. 9 (Thomas)
The thrust of this assignment is that the judge's ruling which allowed the two prosecution witnesses who violated the sequestration order to testify was prejudicial error, and as such a new trial should be afforded the defendants as provided in Louisiana Code of Criminal Procedure Article 851(2).
*670 For the reasons outlined in Assignment of Error No. 5 (Badon)/Assignment of Error No. 6 (Thomas), we find this contention to be devoid of merit.

ASSIGNMENT OF ERROR NO. 8 (Badon)
Defendant Badon was sentenced to a term of thirty-three years in the Louisiana State Penitentiary under the provisions of the habitual offender statute, LSA-R.S. 15:529.1. At the time of sentencing his counsel objected, challenging the constitutionality of that statute and asserting that the statute denies the defendant equal protection and due process.
His constitutional argument rests on the discretionary power given the District Attorney by which he decides whether or not to invoke the provisions of the habitual offender statute. This argument was explicitly rejected in Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). The United States Supreme Court stated:
"Moreover, the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. Therefore grounds supporting a finding of a denial of equal protection were not alleged. Oregon v. Hicks [213 Or. 619, 325 P.2d 794 (1958)]; cf. Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944); Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886) (by implication)."
That decision is dispositive here.
Counsel also avers that by imposing additional punishment on one previously convicted of another offense is in effect punishing a status, and therefore constitutes cruel and unusual punishment.
In State v. Williams, La., 322 So.2d 177 (1975), this Court rejected an identical contention, stating:
"There is no substance to this argument. Habitual offender statutes have survived constitutional attack so often that their validity is no longer a matter of serious doubt. See McDonald v. Massachusetts, 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542 (1901). The constitutionality of La.R.S. 15:529.1 has been upheld by this court several times. It is well established that the law does not make it a crime to be a multiple offender; it merely prescribes an enhanced penalty for multiple offenders. As an enhancement-of-penalty provision, the statute does not punish a status, nor does it impose cruel and unusual punishment. See State ex rel. Williams v. Henderson, 289 So.2d 74 (La. 1974); State v. Vale, 252 La. 1056, 215 So.2d 811 (1968), rev'd on other grounds, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); State v. Guidry, 169 La. 215, 124 So. 832 (1929). See also Price v. Allgood, 369 F.2d 376 (5th Cir. 1966), cert. denied, 386 U.S. 998, 87 S.Ct. 1321, 18 L.Ed.2d 349 (1967)."
See also State v. Bullock, La., 329 So.2d 733 (1976).
The defendant further alleges that Section C of the statute does not adequately set forth how long a person is to be classified as a habitual offender. LSA-R.S. 15:529.1(C) provides:
"C. This Section shall not be applicable in cases where more than five years have elapsed since the expiration of the maximum sentence, or sentences, of the previous conviction, or convictions, and the time of the commission of the last felony for which he has been convicted. In computing the period of time as provided herein, any period of servitude by a person in a penal institution, within or without the state, shall not be included in the computation of any of said five year periods."
The defendant specifically argues that the statute is ambiguous in that it does not clearly indicate at which point the five year period is to begin and end.
In State v. Broussard, 213 La. 338, 34 So.2d 883 (1948), we construed this section *671 as using as measuring posts for the five year term the interval
". . . between the expiration of the sentence imposed for the last previous felony conviction and the date of the commission of the latest felony."
Finally, the defendant charges that the habitual offender statute deprives the judge of control over the sentencing. In State v. Ugarte, 176 La. 54, 145 So. 266 (1933), this Court rejected this contention.

ASSIGNMENT OF ERROR NO. 7 (Thomas)
Counsel for the defendant Thomas cites as error the refusal by the trial judge to grant his Motion for a New Trial. This motion was based on the identical arguments urged in his second and third assignments of error. Since we have found these contentions to be without merit, the lower court correctly denied a new trial.

ASSIGNMENT OF ERROR NO. 8 (Thomas)
Before sentence was pronounced, the defendant Thomas filed a Motion in Arrest of Judgment. As a basis for it, his counsel points to the same issues raised in his third assignment of error. Because this argument has been previously rejected, we find it unnecessary to consider the motion.
For the reasons assigned, the convictions and sentences are affirmed.
DENNIS, J., concurs, although disagreeing with the treatment of assignments Nos. 5 (Badon) and 6 (Thomas).
CALOGERO, J., dissents and assigns reasons.
CALOGERO, Justice (dissenting).
Defendant Badon and Thomas argue, in assignment of error number five (Badon) and assignment of error number six (Thomas), that the trial judge committed prejudicial error in refusing to grant a mistrial on the ground that the state's two deputy sheriffs who gave testimony to rebut the defendants' alibi witness had violated the court's sequestration order by discussing their testimony before taking the stand. I believe that the judge's decision was in error, and that this Court has mistakenly affirmed defendants' convictions.
Deputies Lee and Suer had investigated the scene of the crime and testified earlier in the trial as to their investigation. When each left the stand, he was told he was still sequestered and that he was to talk about the case with no one. These same two deputies were recalled by the state on rebuttal, whereupon each testified for the first time that he had several times, on the night of the crime, passed the bar where the defendants were allegedly playing dice at the time of the crime, and that the bar was closed. Both officers testified that there were no automobiles or people in front of the bar, and that they remembered that the lights were off. On cross-examination it was revealed that the two deputies had discussed between themselves the testimony that they were about to give before coming to the stand on rebuttal, and that they agreed (presumably after reminding each other) that no people were on the street in front of the bar, and that it was closed.
Although both deputies had testified at defendants' first trial which resulted in a hung jury, neither testified to this effect at the previous trial. Nor, evidently, was this information part of their police report. Thus, when the two deputies testified on rebuttal that the bar in question was closed, they were testifying wholly from memory as to observations made many months before, and discussed between themselves in violation of a sequestration order.
I believe that the trial judge abused his discretion when, under these circumstances, he refused to grant the defense-requested mistrial, and I believe that defendants Badon and Thomas are due a new trial which does not include the two officers' damaging, agreed-upon testimony.