624 So.2d 17 (1993)
STATE of Louisiana
v.
Darrell CLAIBORNE.
No. 93-KA-0082.
Court of Appeal of Louisiana, Fourth Circuit.
August 31, 1993.
*18 Harry F. Connick, Dist. Atty. and David L. Arena, Asst. Dist. Atty., New Orleans, for appellee.
Jeffery Smith, New Orleans, for appellant.
Before LOBRANO, WARD and ARMSTRONG, JJ.
LOBRANO, Judge.
The defendant, Darrell Claiborne, was indicted by an Orleans Parish grand jury, along with Melvin Green and George McClow, for the first degree murder of Pamela Block. Green's case was severed and he was subsequently found guilty of the charge. The charges against Claiborne and McClow were amended to second degree murder, a violation of La.R.S. 14:30.1. Claiborne and McClow's cases were subsequently severed.
Defendant Claiborne was tried by a jury who found him guilty of manslaughter.[1] The trial judge sentenced him to twenty-one years at hard labor and ordered that this sentence be served consecutively with any other sentence being served by the defendant. The State subsequently filed a multiple bill against the defendant and, after a hearing, the defendant was found to be a second felony offender. The trial judge vacated the defendant's original sentence and resentenced him to thirty-five years at hard labor to be served consecutively with any other sentence he may be serving. Defendant now appeals.
On August 28, 1991, at approximately 9:00 p.m., Pamela and Tommy Block were walking to their car which was parked outside of their home at 4807 Carondelet Street in New Orleans. As they approached the car, Mr. Block saw three men on bicycles riding toward them. He instructed his wife to get into the car but after they took only a couple of steps, one of the three men pulled out a gun, pointed it at Mr. Block and told him to "give it up." The Blocks both dropped what they were carrying and Mrs. Block ran and got into the car. Mr. Block heard a shot, screamed and the three assailants rode away. At that point, Mr. Block went to the car and realized that his wife had been shot. She died later that night at a local hospital.
Information implicating the three men charged in this murder was obtained from a call made to the Crimestoppers telephone line. The three men were arrested and Green gave a statement to police which led to the recovery of the gun used in the murder. Claiborne made an oral statement to Detectives Louis Berard and Norman McCord in which he acknowledged that he was present during this crime and identified Green as the gunman but claimed that he did not have a gun or shoot anyone. However, after speaking to his mother by telephone, Claiborne refused to sign a written statement.
Tommy Block testified that Melvin Green was the man who pointed a gun at him near the driver's side of the car while Darrell Claiborne stood near the passenger side of the car. Block did not know if Claiborne had a weapon. Block positively identified Claiborne in a photographic lineup and at trial.
Defendant presented several alibi witnesses who claimed that he was with them playing cards on the evening in question.
*19 In the first assignment of error, the defendant argues that the trial court erred in imposing an unconstitutionally excessive sentence by exceeding the felony sentencing guidelines and by ordering the sentence to be served consecutively with any other sentences being served by the defendant. Following defendant's manslaughter conviction, he was originally sentenced to twenty-one years at hard labor. His attorney made a motion to reconsider that sentence which was denied by the trial judge. The State subsequently filed a multiple bill of information. A multiple bill hearing was held and the defendant was found to be a second felony offender due to a prior conviction for possession of stolen property. Defendant's original sentence was then vacated and he was resentenced as a multiple offender to thirty-five years at hard labor.
As a second felony offender convicted of manslaughter, the defendant was subject to a statutory sentencing range from ten and one-half years to forty-two years. R.S. 14:31[2], R.S. 15:529.1. Thus, defendant's enhanced sentence was within the statutory limits and less than the maximum sentence allowable. Furthermore, the trial judge's stipulation that this sentence is to be served consecutively with other sentences being served by the defendant was clearly within the trial judge's discretion. See, LSA-C.Cr.P. art. 883. Defendant argues, however, that according to the sentencing guidelines the maximum sentence should be fifteen years.[3] We disagree.
Code of Criminal Procedure Article 894.1 provides that a sentencing judge shall consider the guidelines promulgated by the Louisiana Sentencing Commission in determining the appropriate sentence to impose. Although actual compliance with these guidelines is discretionary, the record must reflect that they were considered by the sentencing judge. State v. Jack, 614 So.2d 215 (La.App. 3rd Cir.1993), writ denied, 619 So.2d 575 (La.1993). In State v. Smith, 610 So.2d 152, (La.App. 4th Cir.1992), a panel of this Court concluded that where a sentence grossly deviates from the sentencing guidelines, that deviation must be supported by the record. Id. See, LSA-C.Cr.P. art. 881.4(D).
The trial judge stated that he had considered the guidelines before imposing sentence. However, the court found that the circumstances of this particular crime, as well as the defendant's extensive criminal history, put him in the most egregious class of offenders thereby warranting a more severe sentence than that recommended by the sentencing guidelines. In articulating the factual basis for the sentence imposed, the trial judge stated that the defendant was a willing and active participant in this crime which resulted in the murder of a young woman. He also noted defendant's criminal history which included convictions for possession of stolen property and two counts of distribution of cocaine and numerous arrests for various violations including armed robbery, simple robbery, theft, possession of stolen property and battery. The trial judge concluded that defendant is a menace to society and is in a class of the most egregious offenders.
We find no mitigating circumstances present in this case. Although defense counsel argues that defendant tried to discourage Melvin Green from acting rashly at the crime scene, the record does not support that argument. He claims that Mr. Block testified that one of the men other than Green urged Green to "be cool" and interceded on the Block's behalf by telling Green that they were "giving it up" in response to Green's demands. However, a reading of Mr. Block's testimony shows that Block was the one who urged Green to "be cool." Block did state that he heard one the other men say "they are giving it up" but he could not see which of the other two men made this remark and *20 was unable to attribute this remark to the defendant.
We conclude that the record supports the trial court's deviation from the sentencing guidelines and that the sentence imposed is not unconstitutionally excessive.
In his second assignment of error, defendant argues that the trial court erred in denying his motion to quash the multiple bill of information. Defendant argues that the multiple offender statute, LSA-R.S. 15:529.1, is unconstitutional because it violates the separation of powers doctrine and the equal protection clause of the Louisiana Constitution. Defendant claims that the statute impermissibly allows the district attorney, who is part of the executive branch of government, to invade the sentencing powers reserved to the judicial branch since the district attorney has the sole discretion to determine whether a defendant will be charged as a multiple offender.
In State v. Williams, 620 So.2d 475 (La. App. 4th Cir.1993) this court held that the Habitual Offender Law does not violate the separation of powers doctrine of the Louisiana Constitution. In Williams, the defendant argued that the multiple offender statute was unconstitutional for the same reasons argued in the instant case. This court held that the authority given to the district attorney by the multiple offender statute does not usurp the sentencing power of the judiciary because the trial court retains the discretion to sentence within appropriate sentencing ranges and because the appellate court has the discretion to reduce a sentence that is unconstitutionally excessive even if it is within statutory guidelines. We adhere to that reasoning.
Furthermore, defendant's claim that the multiple bill statute violates due process because of the arbitrary nature of the district attorney's discretion is without merit. This same argument was specifically rejected in State v. Williams, supra, citing State v. Badon, 338 So.2d 665, 670 (La.1976); State v. Hawkins, 508 So.2d 925, 926 (La.App. 4th Cir.1987).
Accordingly, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The State nolle prosequi the charges against McClow.
[2] R.S. 14:31, in effect at the time of defendant's sentencing, stated that a manslaughter conviction was punishable by not more than twenty-one years. This statute was amended after defendant's sentencing date to increase the maximum penalty for a manslaughter conviction to forty years.
[3] Because of his two prior felony convictions, defendant argues that he would have a Criminal History Index Classification of Class D under Section 402(F). Manslaughter is a Level 1 crime. For a Class D offender the Sentencing Grid translates to a maximum of 15 years.